Hull, J.
This action comes into this court on petition in error to the judgment of the court of common pleas. Plaintiff in error, who was plaintiff below, brought an action against the city of Toledo for injuries which he claimed he had sustained on account of negligence of the city.
Plaintiff alleged in his petition, in substance, that on the evening of November 3, 1898, while walking along a public street of the city of Toledo, to-wit, Hoag street, he fell through a hole in the sidewalk, which was caused by a board being out, and he claims that the city was negligent in having and- permitting a sidewalk to be in that condition at the time of this injury, and that he, the plaintiff, was without any fault or negligence on his part.
He claims to have been seriously injured; alleges that he is a physician having a practice, as he claims, of about twenty years or a little over, at the time of his injury, and that on account of his injuries he had been confined to his house from the time of the accident and had not been able to practice his profession, and he asks damages against the city in the sum of $20,000.
The defendant admits that Hoag street, on which the plaintiff claims to have been injured, is a public street, and in its answer substantially denies all the other allegations of the petition, except that the city is a municipal corporation as alleged in the petition; and avers that whatever injury the plaintiff suffered, if he suffered any, was on account of his own negligence, contributing to his injury.
The case was tried in common pleas court to a jury and a verdict returned in favor of defendant. A motion for a new trial was filed, upon the ground that the verdict was against the weight of the evidence and contrary to law, and on account of errors claimed to have been committed in excluding testimony offered by plaintiff, and in the general charge of the court; and especially in the giving of requests asked by the defendant. The motion was overruled and judgment entered upon the verdict. Error is prosecuted here to reverse that judgment.
*145 To fairly consider the errors that are complained of here, it will be necessary to state, very briefly, what the evidence of the plaintiff and of the defendant on the trial tended to show. The testimony of the plaintiff himself and of other witnesses called by him tended to show that on November 3, 1898, between the hours of seven and eight o’clock in the evening, he was in his office and was visited by a man and a woman, the man’s name being Swandeck . and the woman’s name Josie Losick, who asked him to come with him at once to visit a woman who was sick in that part of the city. It appears that the plaintiff lived on Nebraska avenue, not very far from Hoag street, the latter being a street in the residence part of the city of Toledo. The doctor started from his office with these two persons, according to his testimony and to that of those who were with him, to visit this woman. It was a dark night and somewhat rainy. When they reached Hoag street, where the accident occurred, the doctor was walking by the side of Mrs. Losick,and Mr. Swandeck was walking immediately ahead of them. They were walking along on Hoag street, in the ordinary way, and when near Vance street the doctor stepped into a hole in the sidewalk, which was an ordinary board sidewalk about five feet in width. He was walking on the outside of the walk towards the driveway, and fell down between the outside stringer and the middle stringer, where a board of the sidewalk, according to the testimony, was out and left a hole about one foot wide and of the same depth. There was no evidence that plaintiff had any knowledge that the board was out, The doctor was gotten out of the hole, made his call upon the sick woman and went home. As I have said, he claims to have been quite seriously injured, to have been unconscious for a short time after the accident; that he was injured to a considerable extent about his limbs, spine and person, and his nervous system very much shocked. The plaintiff called several other witnesses who testified to this plank being out of this sidewalk, some testifying that it had been out since the latter part of July previous, and some having seen it in August and some in September, the accident having occurred November 3, 1898.
The testimony offered by the city conflicted in some re *146 spects with that of the plaintiff and his witnesses, as to the length of time that this board had been out,or as to whether it had been out any appreciable length of time before the accident, some witnesses testifying that it had been- out only seven or eight days, and two witnesses who lived near by, and perhaps upon property abutting on the- street at that place, said that it had not been out at all before that night. Two witnesses called by the city testified to seeing the doctor fall at the place where he claims he did, and there is not very much question, from the testimony, but that the doctor fell through a hole in the sidewalk as he claims he did. The length of time that this board had been out and whether the city ought to have known of it, is in dispute between the parties; whether the city was negligent in that respect, and wheher the plaintiff received such injuries as he claims he did, is also in dispute. Quite a large number of witnesses were called by he defendant, and among them three of four physicians, upon the latter point. With the testimony substantially in this condition the case went to the jury, and a verdict was rendered in favor of the defendant.
It is claimed by the plaintiff in error that the court erred in giving this instruction to the jury in the general charge:
“It must also appear that such defective condition of the walk that occasioned this fall was known to the city, and that the city, with knowledge of this defect, neglected its duty which the law imposes upon it, to repair and put this sidewalk in proper condition for the use of the citizens.’’
It is urged that this instructed the jury that it must appear that the city had positive and actual knowledge of this defect, in order to make the city liable; that the instruction left out the element of constructive or implied notice that would be presumed from a defect existing in the sidewalk for a long period of time, where the city might be held to be guilty of negligence under the doctrine of implied or constructive notice, or because it had not exercised ordinary care in discovering the defect. And it is urged that although this element is covered in other parts of the charge, that the giving ol this instruction to the jury by itself, was erroneous and should be held to be prejudicial error. On the next page of the charge, to-wit, page 110, it appears that the court said this to the jury:
*147 “I must also appear that such defect was actually known to the city through some of its officers, agents or servants charged with the duty of looking after its streets and sidewalks, or it must appear that the defect had existed for •such a length of time prior to the alleged injury that the city, if exercising ordinary care snd diligence, would or should have known of those defects.”
And again, at the bottom of the same page, the court said to the jury:
‘‘As I have said to you, the city to be liable, if {here was a defect in this walk, must have had actual notice of of the defect through its proper officer*, or the defect must have existed for such a length of time that it would be presumed to know of the defect. It is for you to say from the evidence in the case, if you find the walk was defective, whether or not that defect was of such character and had existed for such a length of time as that the city is held, is presumed to have known that the defect existed.”
We think, taking these instructions all together, considering them together, although they appear in different parts of the ehaTge, that the question was fairly covered by the court, and that the jury could not have been and were not misled by the instruction complained of.
The rule, as we understand it, is that the charge should be considered as a whole, and if upon any particular subject or question the charge,-'taken as a whole, fairly submits the question to the jury, although some particular part taken by itself may not state the whole law upon any particular subject or question, that this should not be held to be prejudicial error. In Wheeling & Lake Erie Ry. Co. v. Koontz, 61 Ohio St., 000, a case which went to the supreme court from this circuit, the court, in the fifth paragraph of the syllabus, aay:
‘‘A charge to a jury is to be considered as a whole, and if, construing the whole charge, the law of thé case appears to have been correctly given to the jury, and in a way that will reasonably enable them to understand the rules of law which they are to apply to the evidence before them, the charge will not be held erroneous simply because every condition to a recovery or a defense is not embraced in each paragraph, and the paragraph excepted to is not in itself calculated to mislead.”
*148 We think that taking these parts of the charge together, they come fairly within the rule laid down by the supreme court, and that, therefore, taking the general charge as a whole, there was no error to the prejudice of the plaintiff in error. This is the only complaint made as to the general charge.
After the court had charged the jury generally, the defendant requested certain instructions, which were given. There were eight of these in all, numbered 2, 3, 5, 6, 7, 8, 10 and 11. It is urged by the plaintiff in error that the giving of these instructions as a whole at the conclusion of the general charge, was error prejudicial to the plaintiff; that they called special attention to certain features of the case in behalf of the defendant, laying particular stress upon certain questions in such a manner as to mislead the jury to the prejudice of the plaintiff. And it is claimed that although some of them may state abstract principles of law correctly, that, taking them as a whole, as the concluding statement of the judge to the jury., that they were likely to mislead the jury and to prejudice the plaintiff before the jury. These instructions are as follows:
“2, The city owes no legal duty to negligent persons, that is, to persons who thoughtlessly or who, without using proper precautions for their own safety, expose themselves to manifest perils, or who, by the use of ordinary and reasonable care, might avoid injury to themselves. .
“3. The city does not guarantee the absolute safety and sufficiency of its sidewalks or crosswalks; in other words, i.t is not an insurer of the lives and limbs of persons traveling thereon; but it is bound to use only ordinary and reasonable care.
“5. Before the jury can find a verdict for the plaintiff, they must find that he could not have avoided the injury by reasonable and ordinary care.
“6. It was the duty of the plaintiff to use ordinary and reasonable care for his own safety;in walking or attempting to walk upon the sidewalk, he was bound to use such care and prudence as ordinarily prudent persons are accustomed to exercise in the same or similar circumstances.
“7. If the jury should find from the evidence that the plaintiff contributed to his injury by his own want of care *149 and prudence, either in attempting to pass over the walk when he ought not to have done so, or in passing over the walk in an improper or negligent manner, then he cannot recover.
“8. If the jury should find from the evidence that the defect complained of was not caused by the city, then to charge the city with negligence on account of the defect, the jury must find from the evidence that the city had either actual notice of the defect, or that the defect had existed for such a length of time, or from other circumstances in evidence, that the city by the exercise of reasonable care ought to have known it.
“10. If the jury find from the evidence, that the walk was defective and the injury was the result of such defect, then it is a question of fact for the jury to determine, from the evidence, whether the city had either actual or constructive notice of the defect, and if the jury find that the city did not have such notice, then the plaintiff cannot recover in this action.
“11. The law imposed upon the plaintiff the duty to be upon the lookout while walking upon the sidewalk, and to use ordinary and reasonable care for his own safety, and if, by the exercise of such care he might have avoided the injury, and failed to use such care, then in this action he can not recover against the city.”
Now, considering these requests as a whole, we think that every proposition covered by them, which it was proper to give to the jury, had been fully covered by the general charge: that the law had been given to the jury as favorably as the defendant was entitled to have it given by the court in its general charge to the jury; that therefore these requests were all unnecessary, and that giving them in this way, they did, to some extent, perhaps, mislead the jury'— may have given the jury an impression that the court regarded the plaintiff as a negligent person and one who was not entitled to recover, It seems to us that the same principle, perhaps, might be applied to a series of requests of this kind, calling especial attention to a certain feature of a case, that was applied by the supreme court in Morgan v. State, 48 Ohio St., 371, in regard to a court laying especial emphasis upon certain facts in a case in a manner which *150 might mislead the jury. The court say, on page 377:
“The judge should not single out isolated parts of the testimony, and instruct as to the law arising on the facts which such testimony tends to prove, nor give undue prominence to certain portions of it, and especially ought he not to review with emphasis only those facts which have a tendency to establish one side of the case. When one single act is selected and strongly commented on, the tendency is to distort its importance in the estimation of the jury, and to concentrate attention too intently upon it, to the undervaluing of the rest of the evidence.”
If one of these requests were absolutely erroneous, there might not be sufficient in this to warrant a reversal of the judgment; we say, however, that in our judgment the giving of this series of requests, worded in language selected by the defendant, and bringing prominently before the jury the question of contributory negligence, that the giving of them in that manner, was liable to mislead the jury.
Considering them separately, however, requests No. 2, 7, 10 and 11 are especially objected to and excepted to by the plaintiff in error.
Request No. 2 is as follows: “The city owes no legal duty to negligent persons, that is, to persons who thoughtlessly or who without using proper precautions for their own safety, expose themselves to manifest perils, or who by the use of ordinary and reasonable care, might avoid injury to themselves.”
This is not confined to the transaction or occurrence in question, but speaks generally of negligent persons; and we are of the opinion that this is not a correct statement as a legal proposition — 'that the city owes no duty whatever to a negligent person. However negligent or careless a person may be in his habits and nature of conduct, the city still owes the duty to exercise ordinary care toward him in its conduct over its streets and sidewalks, although such person,if guilty of negligence which contributes directly to his injury, would not be entitled to recover judgment for damages against the city. Rut it can hardly be true, as a naked proposition of law, that a city, or person, artificial or natural, owes no legal duty whatever to a negligent person, and we think that instruction should not have been given.
*151 We think that request No. 7 is objectionable and should have been refused: “If the jury should find from the evidence that the plaintiff contributed to his injury by his own want of care and prudence, either in attempting to pass .over the walk when he ought not to have done so, or in passing over the walk in an improper or negligent manner, then he cannot recover.”
The jury might have gotten the impression from that request that it was negligence, as a matter of law, for the plaintiff, to pass over a walk which he knew to be out of repair' — which he knew had a board out of it,- leaving a hole. We do not understand that to be the law; although the walk might be out of repair to the extent of having one. board out and the plaintiff knew it was out of repair to this extent, still he was at liberty to use it, being required to exercise on his part such care as the nature of the walk required. Jones on Negligence of Municipal Corporations, sec. 221. This instruction was objectionable for the further reason that it was inappropriate under the evidence and ■misleading. There was no evidence that the plaintiff had ever been over the walk before, or had any knowledge before the night of the accident of its condition, and he testified he had not.
Request No. 10 is especially objected to: “If the jury find from the evidence that the walk was defective and the injury was the result of such defect, then it is a question of fact for the jury to determine, from the evidence, whethór the city had either actual or constructive notice of the defect, and if the jury find that the city did not have such notice, then the plaintiff cannot recover in this action.”
It is urged by the plaintiff in error that this contained no definition to the jury of what “constructive notice” means; and that the jury, without such definition, would be, and-probably were, misled, and may have regarded it as the same as what is known as “actual notice”. There is no definition in the general charge of “constructive notice,” nor anything in the request that was given, and the phrase is here used for the first time. And the court says it is for the jury to determine whether the city'had either actual or constructive notice of the defect, and “if the jury find that the city did not have such notice” — that is, either actual or *152 constructive — ‘“then the plaintiff cannot recover in this action.” Now the court had said by the request immediately before that, to the jury, that ‘‘the jury must find from the evidence that the city had either actual notice of the defect, or that the defect had existed for such a length of time, or from other circumstances in evidence, that the city by the exercise of reasonable care, ought to have known it.” By constructive notice, undoubtedly, was meant that the defect had existed for such a time that the city might be presumed to have notice, The court, however, had just charged the jury upon that question in the instruction immediately preceding — No. 8 — and the jury, without any definition of constructive notice, might well have thought that ‘‘constructive notice,” as used in proposition No, 10, meant something different from what had been referred to in instruction No. 8; and, going to the jury in this way — ■ without any definition as to what constructive notice is — in our judgment it was liable to mislead the jury and perhaps did mislead the jury, and ought not to have been given. What amounts to constructive notice, is a question that is discussed in a good many cases and in many books, by judges and by lawyers. The plaintiff might have asked for a further instruction upon this question, it is true, but he did not. The instructions that are requested in this way, after the charge to the jury and handed up to the judge, we think should be complete in themselves and state the law correctly and clearly in themselves; and, for these reasons, we think request No. 10 ought not to have been given in the form and connection that it was. But standing alone the giving of this request would not reverse the judgment.
Bequest No. 11 is also especially objected to. It reads as follows: ‘‘The law imposed upon the plaintiff the duty to be upon the lookout while walking upon the sidewalk, and to use ordinary and reasonable care for his own safety, and if, by the exercise of such care, he might have avoided the injury, and failed to use such care, then in this action he cannot recover against the city.”
It is urged by counsel for plaintiff in error that’ this imposed upon the plaintiff below a duty, as a-matter of law, which should not have been imposed upon him. The court says: ‘‘The law imposed upon the plaintiff the duty to be *153 upon the lookout while walking upon the sidewalk, and to use ordinary and reasonable care,” etc. In our judgment, this instruction was erroneous. It is not sustained by the general authorities upon the question of negligence, nor by the decisions of the courts. The instruction was probably taken from Jones on Negligence of Municipal Corporations, section 219, which contains the language:
“He is entitled to assume, however, that the public streets and walks maintained by a municipal corporation are reasonably safe for use, by day or by night. But he cannot rely on this assumption to protect him when there is an open defect in the way that he could readily have seen had he looked. The extent of the obligation resting upon him is to exercise reasonable care.”
This authority was cited by counsel for defendant in error. If the construction is to be placed upon that paragraph which is sought to be placed upon it here, that, as a matter of law, when walking upon a sidewalk, one is bound to be upon the lookout for holes in the walk, then we think that it does not state the law correctly. The author cites in a foot note, 133 Ill., 148, which states the law very differently. The supreme court of Illinois hold that a person walking upon a walk is not bound to be upon the lookout. We understand the law to be that a person may presume and has a right to presume, if he has no knowledge to the contrary, that the walk is in reasonable repair, and one walking along it, either in the night time or the day time, is bound to exercise only ordinary and reasonable care, and what such reasonable and ordinary care would be is a question under the circumstances of each particular case, for the jury. Whether the circumstances are such that ordinary care requires him to be “on the lookout” is a question for the jury and not for the court.
The cases are numerous on this question of the duty of a person walking upon a sidewalk, and so far as we have been able to examine the authorities, we find no case where it has been laid down as a matter of law that a person walking upon a sidewalk, which he has no knowledge is out of repair, is bound to be upon the lookout. In Driscoll v. Mayor, 18 Hun. (25 N. Y.), 101. The court say, a page 103:
*154 “It was the duty of the defendant to keep the walks in such a condition that they could be safely used by persons reasonably engrossed in their own pursuits; even the most prudent will sometimes be incapable, by pressure of their cares, from avoiding that condition. Indeed, it is quite common to find careful people in just that state of mind. It naturally results from the subjects employing their attention, and their confidence in their ability at the same time to- secure their safety, and cannot be held to be unequivocal evidence of the want of care. There are many causes which will often divert the attention from objects of danger, ordinarily known to be near at hand, without rendering the individual injured chargeable with neglect; and as that is the case, the question of the existence of negligence must, in most cases, be a subject for the decision of a jury. It is an inference to be deducted from circumstances, and for that reason within the province of that body.”
In another case, Davenport v. Ruckman, in 37 N. Y., 568, at page 673, the court of appeals of New York say:
“The streets and sidewalks are for the benefit of all conditions of people, and all have the right, in using them, to assume that they are in good condition, and to regulate their conduct upon that assumption. A person may walk or drive in the darkness of the night, relying upon the belief that the corporation has performed its duty and that the street or the walk is in a safe condition. He walks by a faith justified by law,, and if his faith is unfounded and he suffers an injury, the party in fault must respond in damages.”
And in Minick v. Troy, 83 N. Y., 514, in the syllabus of the esse, the last paragraph, the court say: “The injury was caused by the wheel of a wagon in which plaintiff was riding, running into a hole in the street. The court, after it had charged, in substance, that plaintiff could not recover if her negligence had in any manner contributed to the injury, and that she was responsible for the conduct of the driver, the son, was asked by defendant’s counsel to charge that ‘if the hole was one which might have been seen by the plaintiff or her son and readily avoided by the-ordinary exercise of their eyes, the failure to avoid it con *155 stituted negligence.’ The court replied that this was substantially correct save the expression ‘might have been seen,’ as to which he charged, in substance, that if, in the use of ordinary care, the hole ought to have been discovered, plaintiff could not recover.’ Held, no error.”
The law is laid'down substantially in the same way by the supreme court of Massachusetts, in Wood v. Boston, 121 Mass., 337, where the court in the syllabus, say:
“At the trial of an action for injuries caused by a defect in a highway, it appeared that the plaintiff, on the afternoon of a bright and pleasant day, stepped into a hole in the sidewalk and was injured, and that there was no ice or snow upon the sidewalk. The plaintiff testified that, at the time, she was not looking at the sidewalk, and that, if' she had seen the hole, she should have stepped past it. Held, that the question whether the plaintiff was in the exorcise of due care, was rightfully submitted to the jury;”
And this is the law in the western states as wall as in the east. In Indianapolis v. Gaston, 58 Ind., 224, the court say in the syllabus:
‘‘Any person traveling a sidewalk of a city, which is in constant use by the public, has a right, when using the same with due diligence, to presume, and act upon the presumption, that it is reasonably safe for ordinary travel, throughout its entire width, from all dangerous and annoying obstructions of a permanent character.
And in 133 Ill., 148, the court in the'syllabus say:
‘‘The question of negligence of a plaintiff contributing to his injury is one of fact, and not one of law, It is for the jury to determine, from the evidence, whether one or both of the parties may have been negligent in their conduct, and not for the court to taka the question from them, and declare that if certain facts exist negligence is established. It is not proper for the court to tell the jury that certain facts constitute negligence.”
This was a sidewalk case. The court say, on page 151:
‘‘The plaintiff in this case was bound to make a reasonable use of her faculties when walking along the sidewalk in order to avoid danger, but what was such reasonable use *156 was a question of fact to be determined by the jury under all the circumstances disclosed by the evidence.”
The court below was asked to charge that: ‘‘Ordinary care requires that the foot passenger shall use her eyes as well as her feet, and therefore, if you believe from the evidence, that the plaintiff was injured because of the failure on her part to look where she was going, or observe the condition of the sidewalk on which she was walking, you should -find the defendant not guilty.” And the court say this instruction was properly refused, it virtually saying to the jury that certain facts constituted negligence.
Also, on this same proposition, Chicago v. Babcock, 143 Ills., 358, the second and third divisions of the syllabus:
‘‘A pedestrian upon such a sidewalk may ordinarily assume that the same is in a reasonably safe condition for travel. He is not absolutely bound to keep his eyes constantly fixed on the sidewalk, in search of possible holes or other defects therein.
‘‘A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such care, depends upon the circumstances of each particular case, and is a question of fact for the jury.
And the court say, page 363:
“A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of each particular case, and is a question of fact for the jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. To hold that such person is absolutely bound to keep his or her eyes constantly fixed upon the sidewalk in a search for possible holes or other defects, would be to establish a manifestly unreasonable and wholly impracticable rule.”
In Matthews v. Cedar Rapids, 80 Iowa, 459, the syllabus of the case is as follows:
‘‘Under a well lighted and attractive show window in a city, there was an open area way, about five and a half feet long and fifteen inches wide, extending about five inches of its width into the sidewalk, and the other ten inches undei *157 the building, whose wall over the opening was about three feet above the level of the walk. Plaintiff, while passing by, was attracted to the window, and, fell into the opening, and was injured. In an action against the owner of the building and the city, plaintiff’s testimony showed that by looking he could plainly have seen the opening. The court instructed on the subject of contributory negligence, that it was plaintiff’s duty to ‘Use his eyes and look where he was walking, and avoid all obstacles visible and not obscured.’ ” Held, that the instruction was erroneous, because, when taken in connection with plaintiff’s own testimony, it was equivalent to a holding, as matter of law, that he was guilty of contributory negligence, whereas that was a question for the jury, to be determined from all the facts in the case; since it is certain that under the facts, different minds might reasonably reach different conclusions as to whether the plaintiff did not take all the care that was re^ quired of him as a reasonably prudent man, under the circumstances.”
At pages 262, 263 and 264, the court discuss the question quite fully¡
In Thompson on Negligence, .volume II, page H97, section 42, the author says: ‘‘There is no rule of law which obliges a person, while upon the highway, to keep his eyes-constantly upon the road before him, that he may avoid injury from any defects therein. He may presume that the road is in a fit condition for travel. In other words, he is not obliged to presume negligence on the part of those whose duty it is to keep the highway in repair.”
Also Shearman & Redfield on Negligence, volume I, section 375: ‘‘The application to actions for defective highways of the rule as to contributory negligence requires some further illustration than that given in the chapter on the general subject. In the first place, the rule does not apply to an action against one who unlawfully created the defect in the highway which caused the injury, such an action being founded on nuisance, and not on negligence. It is, however, applicable to actions founded on statutory as well as common law liability. In either case the standard of care required of a traveler on a highway is, in general, simply such as persons of common prudence ordinarily ex *158 ercise under the same circumstances. When ignorant of any defect in the way, he has a right to presume and to act upon the presumption, that a highway is reasonably safe for ordinary travel. He is not bound to have the most perfect vision, nor to look ahead to avoid defects which ought not to exist; nor to keep his eyes constantly on the pavement before him. He need have only a reasonable assurance of safety before venturing upon the highway; and whether such assurance, under the circumstances, is well founded, is a • question for the jury to determine. The mere fact of stepping into an open excavation in a sidewalk, in the daytime, is not conclusive of negligence. A traveler is bound to observe the presence of lawful obstructions and notorious defects; and, if there is anything about them to apprise him of danger, he must exercise greater care in passing over them or by them, than if they did not exist. If there is nothing to indicate that the way is dangerously defective, he is only bound to use ordinary care. If they were not observed because he was not looking, or was stepping backward, or was running too fast to notice anything, or allowed his attention to be momentarily diverted, or was intoxicated, it is for the jury to say whether he was guilty of contributory negligence. If ignorant of any dangerous obstructions, he may cross a street at any point that suits his convenience, without imputation of negligence. The blind and the halt are entitled, like other travelers, to presume that a highway in constant use, is reasonably safe for ordinary travel, and he is not in fault for neglecting to observe and avoid a defect therein which is not so plain and obvious as to be necessarily observable by one in the posses-sion of ordinary faculties, traveling at an ordinary pace. .Under the principles stated in section 93, ante, the traveler’s negligence, in order to defeat his action, must have proximately contributed to the causing of his injury,”
Also cite Beach on Contributory Negligence, sections 246a and 274: ‘‘A person using a public highway is not required to be vigilant to discover dangerous obstructions, but he may walk or drive in the daytime or night-time, relying upon the assumption that the corporation whose duty it is to keep the streets in a safe condition for travel has performed that duty, and that he is exposed to no danger from its neglect.”
*159 “When the higwhay is out of order, it is held, as a general rule, not negligent to use it, in as prudent a way as practicable, which is to say that using a defective highway is not negligence as a matter of law. It would be ah extraordinary rule that made it negligence not to stay indoors whenever the highway is out of repair. "Rut when the condition of the highway is such that it is obviously dangerous to go upon it, and it appears that the plaintiff might easily have taken another course and avoided the danger, there can be no recovery in case of injury. To go upon a highway under such circumstances, is negligence sufficient to bar an action for damages. Mere knowledge, however, of defect or danger in the highway, on the part of the person injured thereby, is not conclusive evidence of negligence contributing to the injury. As, for instance, where one has proceeded so far in a narrow pass before being warned of danger ahead that he is unable to turn back,”
We think this instruction which imposed upon the plaintiff as a matter of law, the duty to be upon the lookout while walking upon the sidswalk, was erroneous, and was perhaps decisive of the case against the plaintiff, The evidence of the plaintiff deos not show that he was on the lookout or looking ahead, but, on the contrary, he was walking along the sidewalk in the ordinary way as people generally walk along sidewalks, and the jury, being instructed that it was his duty under the law to be on the lookout, could not very well do otherwise than find a verdict in favor of the defendant.
We think, then, that the three instructions especially complained of, the second, seventh and eleventh, were erroneous, the tenth objectionable for the reasons stated, and that the others ought not to have been given, in the form that they were and in connection with these, for the reason that so far as proper they had ail been fully covered by the general charge.
The plaintiff in error also complained that the court erred in excluding the testimony of Doctor Cherry, who treated the plaintiff. He was aBked what his services were reasonably worth. The doctor testified that he did not intend to make any charges against Dr. Ohliger for these services, on account of his being a physician, and for that reason, *160 the court excluded the testimony as to their value. There was no statement on the part of plaintiff’s counsel what he expected the witness would testify these services were worth, and, therefore, it does not appear from the record that there was any prejudicial error; but as the case is to go back for a re-trial, we think we should say that in our opinion, under the doctrine of our supreme court in Klein v. Thompson, 19 Ohio St., 569, the testimony was admissible, although Dr. Cherry testified that he did not intend to charge Dr. Ohliger anything for his services. The first paragraph of the syllabus in that case is as follows:
“In an action for assault and battery, the plaintiff may recover as part of his damages the amount of a surgeon’s bill which he incurred for treating his injuries, although, before the trial, it had been voluntarily paid by the trustees of the township, to whom the plaintiff was under no legal liability to refund the amount,”
And the supreme court of Indiana, in Indianapolis v. Gaston, 58 Ind., 224; Pennsylvania Co. v. Marion, 104 Ind., 239, have held that such testimony was admissible, although the services were gratuitous. The doctrine of the cases appears to be, that although the services were given without charge, that this was not for the benefit of the de- . fendant, the person charged with the wrongdoing, and therefore it is not a defense to a recovery. The question came up squarely in Indianapolis v. Gaston, supra, and on page 237, the court say:
“The refusal to permit certain evidence, offered by the appellant, to the jury, is also complained of as error. The appellant offered to prove that it was a universal custom amongst physicians and surgeons not to charge members of the profession for services rendered. This evidence was properly rejected. Whenever it is proper in such a case to prove the services of a physician or surgeon, the fair value of such services is the legal rule, even though they might have been rendered gratuitously.”
The court say in Pennsylvania Co. v. Marion, 104 Ind., 244:
“The plaintiff having testified that the nurses who attended him while prostrated from the injury, did so voluntarily and without charge, was nevertheless permitted, *161 over objection, to prove by bis attending physician what their services were worth. This evidence was admissible under the rulings in City of Indianapolis v. Gaston, 58 Ind., 224, and Ohio, etc. R. W. Co. v. Dikerson, 59 Ind., 317.
E. 0. King and J. M, Bitchie, for Plaintiff in Error.
M. B. Brailey, City Attorney, for Defendant in Error.
“These services were necessary to ameliorate the condition and suffering of the plaintiff. That they were voluntarily and gratuitously rendered was for his benefit, and not for the benefit of the defendant. Klein v. Thompson, 19 Ohio St., 569; Ferryboat D. S. Gregory, 2 Ben., 226; Cunningham v. E. & T. H. R. R. Co., 102 Ind., 478.”
In our judgment the testimony should have been admitted.
For the errors mentioned the judgment of the court of common pleas will be reversed and the case remanded for a new trial.