OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Simmers et al., Appellees, v. Bentley Construction Company, Appellant, et al.

[Cite as Simmers v. Bentley Constr. Co. (1992),     Ohio St.3d     .]

Torts -- Negligence -- Independent contractor who creates a dangerous condition on real property is not relieved of liability under the "open and obvious" hazards doctrine.

An independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property.

(No. 91-1500 -- Submitted May 19, 1992 -- Decided September 9, 1992.)

Appeal from the Court of Appeals for Richland County, No. CA-2783.

On August 27, 1987, fourteen-year-old plaintiff- appellee Stephen Simmers was seriously injured when he fell through a hole in a railroad bridge owned by CSX Transportation, Inc. ("CSX"). The bridge supported an abandoned railroad track and a walkway beside it that ran the length of the bridge. The walkway was approximately four and three-quarters feet wide with a four-and-a-half-foot-high guardrail to protect people from falling. The bridge spans a creek, about thirty feet above the water. The bridge interconnects public parks, community baseball diamonds, a Boy Scout camp, and fishing areas.

At the time of the accident, defendant-appellant Bentley Construction Company ("Bentley") was under contract with CSX to remove cross-ties, spikes, and plates left when the railroad removed tracks near the bridge. Bentley did not contract to remove any materials from the bridge. For purposes of this appeal only, Bentley concedes that sometime between June 22, 1987 and August 22, 1987, a Bentley crew member attempted to drive a fifteen-ton front-end loader across the walkway portion of the bridge. The front-end loader fell through the boards of the walkway and became stuck, leaving a fifteen-and-a-half-by-four-foot hole in the walkway. Bentley did not attempt to repair or barricade the hole. David Bentley, Bentley's owner,

knew that children used the bridge on a regular basis.

The accident occurred when Stephen and his friend, Andy Thomas, were walking across the bridge. Both boys had been on the bridge many times. Andy knew the hole was there and walked around and past it. Stephen, who was several steps behind Andy, did not know about the hole. Because he was adjusting his watch band, Stephen was not looking where he was going and fell through the hole onto the rocks and debris in the river bed below.

On October 12, 1988, Gerald Simmers, Stephen's father, filed suit on behalf of Stephen and himself against defendants CSX and Bentley. Simmers claimed that defendants' negligent creation of the hole and failure to take appropriate safety precautions was the proximate cause of Stephen's injuries. Simmers sought damages for past and future medical expenses, pain and suffering, and lost wages. The trial court granted summary judgment in favor of CSX and dismissed it from the action, finding that CSX owed no duty to Stephen because the hole in the bridge was open and obvious. CSX is not a party to this appeal.[1] By a separate ruling the trial court also granted summary judgment in favor of Bentley on the ground that the hole was open and obvious.

The court of appeals reversed and remanded, holding the following to be genuine issues of material fact: (1) did Bentley create the hole? (2) was Bentley negligent with regard to creating and/or dealing with the hole? and (3) what was the proximate cause of Stephen Simmers's injuries?

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Wiles, Doucher, Van Buren & Boyle Co., L.P.A., Paul M. Doucher and Thomas J. Keener, for appellees.
Lane, Alton & Horst, Rick E. Marsh and John A. Fiocca, Jr., for appellant.

Herbert R. Brown, J.    The issue before us is whether the trial court properly granted summary judgment to Bentley. Bentley is an independent contractor who concedes for purposes of this appeal that it created a dangerous condition on the railroad bridge. Accordingly we must decide whether Bentley's liability is determined by the rules governing landowner liability or by the ordinary rules of negligence. For the reasons that follow we find that the rules of negligence apply and that summary judgment was improper.

The trial court and the court of appeals determined that CSX, the owner of the bridge, owed no duty to Stephen Simmers because the hole was an open and obvious danger. Bentley argues that this determination became the law of the case. Therefore, Bentley claims, it had no duty to warn of the danger and cannot be held liable for Stephen Simmers's injuries. We disagree.

The rule relieving a defendant from liability for harm resulting from "open and obvious" hazards is a legal doctrine that has developed in suits against property owners by a person injured when he comes on the property. The "open and obvious" doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious

dangers on the property.  Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, at paragraph one of the syllabus; Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474.  The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning.  Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.  Sidle, supra.2

Historically, a landowner's liability in tort is incident to the occupation or control of the land, which involves the owner's right and power to admit and exclude people from the premises.  Wills v. Frank Hoover Supply (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 162, 497 N.E.2d 1118, 1120; Mitchell v. Cleveland Elec. Illum. Co. (1987),  30 Ohio St.3d 92, 94, 30 OBR 295, 297, 507 N.E.2d 352, 354.  The "open and obvious" doctrine, therefore, governs a landowner's duty to persons entering the property--property over which the landowner has the right and power to admit or exclude persons as invitees, licensees, or trespassers.

Bentley was an independent contractor performing services for the owner of the bridge.  While Bentley may have had the right to be on, and in the vicinity of, the bridge, it had no property interest in the premises.  In fact, it was stipulated that "Bentley Construction Company did not contract to, nor was it responsible, to remove tracks or ties from the bridge in Lexington, Ohio which is the location of this incident."  We are not persuaded to extend the "open and obvious" doctrine to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises.

Accordingly, we hold that an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property.

Since Bentley had no property interest in the premises, we must look to the law of negligence to determine Bentley's duty of care, and then consider the significance of the factual finding that the hole was open and obvious.

Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position.  Huston v. Konieczny (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505, 508; Commerce & Industry Ins. Co. v. Toledo (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142-143, 539 N.E.2d 614, 616-617; Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180, 472 N.E.2d 707, 710.  Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone.  Huston, supra; Commerce & Industry, supra.

For this appeal, Bentley concedes that it created the hole and that the hole was a dangerous condition.  Bentley's owner also admits knowing that the public, including children, frequently used the bridge.  Therefore, it was foreseeable that someone using the bridge was likely to be injured by falling through the hole.  Under the facts stipulated to us, Bentley

owed a duty of care to users of the bridge.

Once the existence of a duty is found, a plaintiff must show that the defendant breached its duty of care and that the breach proximately caused the plaintiff's injury. Mussivand v. David (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270; Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732.

Bentley made no attempt to repair or barricade the hole. Accordingly, there are factual questions which are not properly resolved by summary judgment. One such question is whether a breach of duty resulted from the failure to guard or otherwise protect the hole. See Prentiss v. Kirtz (1977), 54 Ohio App.2d 56, 8 O.O.3d 59, 374 N.E.2d 429. A second is whether the condition of the hole was itself sufficiently discernible to constitute an adequate warning of the danger. See Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 3 O.O.3d 4, 358 N.E.2d 634, at syllabus; Paulin v. John R. Jurgensen Co. (1982), 7 Ohio App.3d 273, 7 OBR 354, 455 N.E.2d 524. Even if the hole might have been sufficiently "open and obvious" to relieve a landowner of liability, that determination does not resolve either of the fact questions which must be addressed under the general law of negligence.

In the law of negligence, an "open and obvious" danger can also place affirmative defenses at issue. These would be (1) contributory negligence, and (2) assumption of the risk. Rothfuss v. Hamilton Masonic Temple Co. (1973), 34 Ohio St.2d 176, 63 O.O.2d 270, 297 N.E.2d 105; Briere v. Lathrop Co. (1970), 22 Ohio St.2d 166, 51 O.O.2d 232, 258 N.E.2d 597.

In essence, Bentley argues that Stephen was negligent in failing to protect himself from an open and obvious danger and that his negligence proximately caused his own injuries. A plaintiff's contributory negligence, however, does not automatically bar recovery for damages directly and proximately caused by the defendant's negligence. R.C. 2315.19(A)(2).

Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion. Hitchens v. Hahn (1985), 17 Ohio St.3d 212, 213-214, 17 OBR 447, 448, 478 N.E.2d 797, 799; Shinaver v. Szymanski (1984), 14 Ohio St.3d 51, 14 OBR 446, 471 N.E.2d 477. Under the comparative negligence statute, the factfinder apportions the percentage of each party's negligence that proximately caused the plaintiff's damages. R.C. 2315.19(B). A plaintiff may recover where his contributory negligence is equal to or less than the combined negligence of all the defendants. R.C. 2315.19(A)(2).

On the record before us, reasonable minds can reach different conclusions as to (1) whether Bentley breached its duty, (2) whether Stephen was contributorily negligent or assumed the risk, (3) the extent to which the negligence of Bentley or Stephen (if such negligence be found) was the proximate cause of the injuries, and (4) what percentage (if applicable) of the damages should be attributed to the respective parties.

Therefore, we affirm the court of appeals and hold that summary judgment in favor of Bentley was improper because genuine issues of material fact exist regarding the duty issue and the proximate cause of Stephen Simmers's injuries.

                          Judgment affirmed.

     Sweeney, Douglas and Resnick, JJ., concur.

     Moyer, C.J., Holmes and Wright, JJ., concur in part and
dissent in part.

FOOTNOTES:

     1  Plaintiffs appealed the trial court's dismissal of
CSX.  Simmers v. Bentley Constr. Co. (Aug. 20, 1990), Richland
App. No. CA-2747, unreported.  In that appeal, the court stated
that reasonable minds could only conclude that the hole was
open and obvious and that there was no wanton misconduct on the
part of CSX in failing to inspect the bridge.

     2  Although the "open and obvious" doctrine is syllabus
law in Ohio, Sidle, supra, its application has not been
uniform.  See Ohliger v. Toledo (1900), 20 Ohio C.C. 142;
Richmond v. Ohio State Univ. (1989), 56 Ohio Misc.2d 16, 564
N.E.2d 1145.  Further, since Ohio enacted the comparative
negligence statute, R.C. 2315.19, courts must carefully
distinguish between a defendant's duty of care and a
plaintiff's contributory negligence.  See Parsons v. Lawson Co.
(1989), 57 Ohio App.3d 49, 51, 566 N.E.2d 698, 700.  However,
this case does not put at issue the "open and obvious" doctrine
as applied to owners and occupiers of land.

     Wright, J., concurring in part and dissenting in part.
Under the syllabus law announced by the majority, an
independent contractor who creates a dangerous yet open and
obvious condition on real property is never relieved of a duty
to warn licensees of the condition, even when the condition
arises under or is incidental to work specified in a contract
between the landowner and the independent contractor, and even
if the landowner would be immune from liability had he, rather
than the independent contractor, created the dangerous
condition.  The majority's formulation unnecessarily retreats,
without much justification, from the widely accepted rule of
law that those acting on behalf of an owner or occupier are
entitled to the immunities possessed by such owner or
occupier.  See, e.g., 2 Restatement of the Law 2d, Torts (1965)
287, Section 3833; Dishington v. A. W. Kuettel & Sons, Inc.
(1959), 255 Minn. 325, 96 N.W.2d 684; Ireland v. Complete Mach.
& Equip. Co. (1940), 174 Misc. 91, 21 N.Y.S.2d 430.

     Under the law set forth by the majority, an independent
contractor who digs a foundation for a house -- a deliberately
constructed condition of the land that under most circumstances
would certainly constitute an open and obvious hazard -- will
henceforth not be immune from suit by those who, by license or
trespass, come upon the land and are injured by falling into
that hazard.  To impose the risk of liability upon a contractor
who is acting upon the wishes of the landowner and within the
expected scope of his employment, while relieving the owner of
such liability, seems most unfair.4

     A better (and fairer) approach can be found by reference
to this court's decision in Mudrich v. Standard Oil Co. (1950),
153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859.  In that case, the
court declined to bestow the landowner's immunity upon a
business visitor who exceeded the scope of his "business-guest
activities" by negligently performing the task for which he was
invited upon the land.  Id. at 35-36, 41 O.O. at 119, 90 N.E.2d
at 862.  As reflected in paragraph one of the syllabus of that

case, "[a] business visitor upon premises is not by such status relieved of liability for his acts of negligence which are outside and beyond the scope of the business purposes for which he is on the premises."

To treat an independent contractor in the same manner as a business invitee would not be as corrosive a change in the law as that propounded by the majority. Indeed, under Section 383 of the Restatement of Torts, in order for an independent contractor to be cloaked with the immunity of the landowner, the work performed must be "on behalf of" the landowner. Thus, unless the hazard created by the contractor is reasonably contemplated by the landowner as arising under or incidental to the contract between them, the hazard is not created "on behalf of" the landowner, and the landowner's immunity would not extend to the contractor.

By this analysis, the independent contractor who creates an open and obvious hazard that is not within the scope of the contract with the landowner would have no special status with respect to his duty to others entering the land as trespassers or mere licensees. Under Section 386 of the Restatement of Torts, a person who is not acting on behalf of a possessor of land, and who creates or maintains an artificial condition on the land that he should recognize as involving an unreasonable risk of physical harm to others, is subject to liability for the physical harm caused to them, even if those harmed are mere trespassers or licensees. Thus, if Bentley were found to have acted outside the scope of its employment with CSX in creating a dangerous condition on the land, I believe that Bentley would have a duty to either correct the condition or warn others of its existence, even if the condition is open and obvious.5

As reflected in the majority opinion, a question exists as to whether Bentley created the hole in the bridge and, if so, whether allowing the hazard to remain uncorrected was contemplated by CSX as incidental to its contract with Bentley. Accordingly, I concur with the majority's conclusion that summary judgment was not appropriate and that there are material issues of fact that need to be resolved by a finder of fact. Although I disagree as to which issues of fact need to be resolved, I agree that the case should be remanded for trial.

Moyer, C.J., and Holmes, J., concur in the foregoing opinion.

FOOTNOTES:

3 Conveniently, but most understandably, the majority ignores the rule of law recited in 2 Restatement of the Law 2d, Torts (1965), Section 383, and followed by several other jurisdictions. That section reads as follows:

"One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."

4 It has been suggested that the "open and obvious" doctrine no longer has a place in our jurisprudence as a result of the adoption, by statute, of comparative negligence principles. Indeed, some jurisdictions have eliminated the doctrine as an absolute bar, reasoning that it is inconsistent with the concept of comparative negligence. See, e.g., Parker

v. Highland Park, Inc. (Tex.1978), 565 S.W.2d 512; Woolston v. Wells (1984), 297 Ore. 548, 687 P.2d 144; O'Donnell v. Casper (Wyo. 1985), 696 P.2d 1278; Cox v. J.C. Penney Co., Inc. (Mo.1987), 741 S.W.2d 28; Harrison v. Taylor (1989), 115 Idaho 588, 768 P.2d 1321; Riddle v. McLouth Steel Products Corp. (1990), 182 Mich.App. 259, 451 N.W.2d 590. Other jurisdictions, however, have retained the doctrine as an absolute bar, reasoning that it is not incompatible with comparative negligence. These jurisdictions have concluded that because defendant's complete lack of duty in such cases means that he was not negligent at all, there is no negligence to "compare" with that of the plaintiff. See, e.g., Wald v. K Mart Corp. (1990), 136 Ill.2d 132, 554 N.E.2d 223. Although I remain unconvinced that the doctrine has outlived its usefulness in our jurisdiction, I nevertheless would prefer a wholesale repudiation of the doctrine to the piecemeal eradication the majority has initiated today.

5 One important policy reason for rejecting immunity for a contractor who acts outside the scope of his contract is to protect the landowner, his invitees and licensees from the creation of conditions that, while arguably open and obvious, are nevertheless dangerous and are unknown to the landowner. It is only through knowledge that a dangerous condition exists that a landowner can assess the risk of the hazard and determine whether, even in an absence of a duty to act, the hazard should be eliminated or a warning of the hazard should be given.

When a contractor acts outside the expectations of the landowner and creates or maintains a hazard without the landowner's knowledge, the landowner cannot be expected to inspect the premises for hazards that are, with reference to the scope of the contractor's work, unexpected. In order to promote the repair of or warning about such "unexpected" hazards, however, it is entirely appropriate to impose upon the contractor the duty to mitigate the potential danger of the hazard by repair or through the placement of warnings or barricades. Although the majority's approach is consistent with this goal, it reaches too far to include those contractors who are acting on the landowner's behalf and those hazards that are well within the expectations of the landowner.