[Cite as *Washington v. Speedway Superamerica, L.L.C.*, 2012-Ohio-3260.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97717**

---

## QUEEN WASHINGTON, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## SPEEDWAY SUPERAMERICA, L.L.C.

DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-741609

**BEFORE:**    Sweeney, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**    July 19, 2012

**ATTORNEY FOR APPELLANTS**

Terry Jennrich, Esq.
Geraci & Laperna, Esq.
1370 Ontario Street
Suite 1220
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Stephen T. Persia, Esq.
222 South Main Street
Akron, Ohio 44308

Bradley A. Wright, Esq.
Roetzel & Andress
222 South Main Street
Suite 400
Akron, Ohio 44308

JAMES J. SWEENEY, J.:

**{¶1}** Plaintiff-appellants, Queen and Kofi Washington, appeal the trial court's opinion and order that granted defendant-appellee's ("Speedway") motion for summary judgment on their personal injury and loss of consortium claims against it arising from Queen's slip and fall in a Speedway store. For the reasons that follow, we affirm.

**{¶2}** The trial court granted Speedway's motion for summary judgment and dismissed the Washingtons' claims. All of their assignments of error assert that the trial court erred in some fashion by entering summary judgment in Speedway's favor and will all be addressed together. The substantive facts are set forth below in connection with the assigned errors and will be construed in accordance with the applicable standard of review.

A. Standard of Review.

Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶3}** The party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987); *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Doubts must be resolved in favor of the nonmoving party.

*Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992).

B. Premises Liability Law.

**{¶4}** To maintain a slip and fall action, Washington must establish one of the following:

1. That the defendant through its officers or employees was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co*., 141 Ohio St. 584, 589, 49 N.E.2d 925 (1943).

**{¶5}** Queen Washington was a business invitee. An owner or occupier of the premises ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). They "must also inspect the premises to discover possible dangerous conditions of which [the owner or occupier] does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Perry v. Eastgreen Realty Co*., 53 Ohio St.2d 51, 52, 372 N.E.2d 335 (1978).

**{¶6}** Notwithstanding the foregoing, the open and obvious doctrine provides that a premises owner owes no duty to persons entering those premises regarding dangers that are open and obvious. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968),

paragraph one of the syllabus. If a hazard is open and obvious, the plaintiff is barred from recovery because there is no duty by the owner to warn of the danger. The Ohio Supreme Court reaffirmed the open and obvious doctrine in *Armstrong v. Best Buy*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088.

{¶7} The open and obvious nature of the hazard itself serves as a warning. The owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). By focusing on the duty prong of negligence, the court's analysis focuses on the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. *Armstrong*, *supra* at 84. While often the question of open and obvious is one for the jury, it can at times be determined as a matter of law.

C. Substantive Facts.

{¶8} Construing the evidence in a light most favorable to the Washingtons, we have gleaned the following from the record.

{¶9} On November 18, 2008, Queen Washington stopped at the subject Speedway station around 10:50 p.m. to purchase a slush drink in accordance with her habit. It was wet and snowy. Queen said there was a few inches of snow on the ground. On prior days, she noticed a yellow caution wet floor sign at the entrance of the store but did not see one that night. The floor was not wet when she entered. She was wearing rubber soled boots.

{¶10} Queen prepared her slush drink and proceeded to checkout at the cashier counter. There was a dark mat in front, which she stood on and did not notice it being wet. The floor around it was not wet. The bottom of the mat was rubber and the top had carpeting on it. Queen was asked, "how did you fall, did you slip on something?" And, she responded,

> Yeah, when I turned I guess the carpet was wet and I didn't know how wet it was until I actually hit, you know, my buttocks and my hands and it was soaked when I actually felt it with my hands and my butt. But standing on it I didn't realize it was, you know, even wet.

{¶11} Queen's slush drink, however, had spilled. Queen did not know how long the mat was wet, how it got wet, or if the female cashier knew it was wet. Queen sat for a minute, declined the offer of a new drink, and left for work.

{¶12} Queen called the police that night to report her fall. Two days later she returned to the store to make an incident report.

{¶13} The female cashier ("Henderson") who witnessed Queen's fall allegedly refused to appear for deposition. Her unsworn statement was submitted by the Washingtons in opposition to Speedway's motion for summary judgment. The Henderson statement provides that Queen's shoes must have caused her fall because the floor was dry when Henderson reportedly checked it. The statement further indicates that Queen's slush drink was on the floor.

{¶14} Zachary Freeman was the manager of the Speedway on November 8, 2008, but he was not present at the time Queen fell. His deposition testimony indicates that it was Speedway's policy for the employees to mop and sweep the floors every hour or as

needed. He also said the yellow caution wet floor signs are always up in the winter. Freeman recalled that Cintas would provide the store with either three mats or one mat on a weekly basis. He did not think the mats were slippery when they were wet. He had no prior complaints in that regard and does not know of anyone else falling on the mats.

{¶15} Freeman retrieved a video of Queen's falling incident, but you cannot see the mat in it. She was also seen walking toward the slush machine just after she fell.

D. Analysis.

1. Hazardous condition.

{¶16} The Washingtons allege that there was a defect on the Speedway premises, namely a waterlogged rubber mat. Although the Washingtons allege that Speedway was negligent by creating this allegedly hazardous condition, Speedway relies on Queen's testimony that she saw no water on the floor anywhere in the store including the mat prior to her fall.

{¶17} There is no evidence that Speedway created this condition. The evidence in the record establishes that it was Speedway's policy to mop and sweep the floors hourly and on an as needed basis. They also had a dry vacuum on site. Queen admitted she had no idea if Henderson was aware that the mat was wet; how long the mat had been wet; or even how it got wet. Queen did not notice any water on the floor or on the mat when she stood on it. Notably, there is no dispute that Queen spilled her slush drink in that area. Even if the unsworn Henderson statement could be considered as evidence, it does nothing to further the Washingtons' case. The statement indicates that the floor

was dry and summarily concludes that Washington's shoes must have caused her fall.

**{¶18}** It is possible that the weather conditions being snowy and wet contributed to the condition of the mat. Regardless of whether the wet floor sign was up, Washington admitted that she knew there was two inches of snow on the ground as she entered the store. Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *Sidle*, *supra.* But again, according to Washington's own testimony, the floor was not wet.

**{¶19}** Although Washington suggests that Speedway contributed to the condition of the mat by failing to maintain frequent vacuuming, this is speculative. Henderson's unsworn statement did not address the issue of floor maintenance and Freeman testified that it was done hourly and on an as needed basis. There is nothing to refute that evidence. Without some evidence that Speedway neglected to follow its floor maintenance policies, this scenario cannot be analogized to cases where the premises owner permits an unnatural accumulation of ice and snow to occur.

2. Actual or Constructive Knowledge

**{¶20}** The Washingtons assert that there are genuine issues of material fact as to whether Speedway had actual or constructive knowledge about the alleged waterlogged mat. Queen's testimony defeats this claim. She said the floor was not wet and that she did not notice the mat being wet either until after she fell. Queen did not know if Henderson knew that the mat was wet, how long it had been wet, or how it got wet.

Henderson's unsworn statement indicates that the floor was not wet even after Queen's fall.

{¶21} The only other evidence relative to the wet mat issue came from Freeman who said he does not recall any prior complaints or any other person falling in that manner. According to Freeman, wet floor signs are up throughout the winter. While Queen did not see one on this occasion, she also stated that the floor was not wet. Queen clearly insists that she slipped on a waterlogged mat and not the floor. She, however, did not notice any water on the mat, despite standing on it, until after she fell.

{¶22} Without some evidence that the mat was waterlogged or even otherwise somehow defective before Queen fell, or that Speedway was negligent in its floor maintenance procedures, or that Speedway had knowledge of a hazardous condition, none of the cases cited by Washington persuade us that the trial court erred by granting Speedway's motion for summary judgment in this case.

{¶23} Washington's assignments of error are overruled.

{¶24} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR