[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On July 20, 1996, eleven-year-old Joseph Bradeis (hereinafter "plaintiff"), rode his bicycle with his friend, Michael Schrouk, down Lancaster Avenue in the city of Reynoldsburg. At that time, the length of Lancaster Avenue between Warwick and Wollam Avenues had been closed to all but local traffic so that road improvements could be performed by defendant Johnson Hughes Excavating Co., Inc. ("Johnson Hughes"). Along the length of the construction zone, signs had been placed warning the public that the road was closed and that only "local traffic" was permitted for access as necessary. Neither plaintiff nor Schrouk lived on Lancaster Avenue, nor immediately adjacent to it, but decided to ride through the construction zone in order to save time riding to Bradeis's house. As they did, the two rode around barricades and signs alerting the public that the road was closed to all but local traffic and then across freshly poured concrete which had been used to construct an expansion joint across the pavement of the road surface. Although plaintiff saw the expansion joint prior to riding into it, he did not stop his bicycle before his front wheel fell into the joint throwing him over the handlebar.
 {¶ 2} On May 21, 1999, plaintiff's guardian, Emily Shannon, filed a complaint against defendant Johnson Hughes alleging that Johnson had negligently failed to barricade or warn of the joint at the end of the work day, prior to completing the construction the next day. Plaintiffs also sued the city of Reynoldsburg alleging that it had violated its duty to keep Lancaster Avenue free from nuisance.
 {¶ 3} On November 8, 2001, the trial court granted summary judgment to the city finding that it was entitled to immunity and to Johnson Hughes finding that it did not owe the plaintiff a duty to protect him from the potential harm posed by the expansion joint which was located within an area that had been closed to through traffic. Plaintiff appeals that decision, setting forth the following five assignments of error:
 {¶ 4} "[1.] The trial court erred in granting summary judgment in favor of Johnson Hughes Excavating Co., Inc.
 {¶ 5} "[2.] The trial court erred in granting summary judgment to Johnson Hughes for the reason that Johnson Hughes was under a duty to close Lancaster Avenue to traffic, but was not under an additional duty to take further precautions to protect the minor Joseph Bradeis from the danger posed by the expansion joint.
 {¶ 6} "[3.] The trial court erred in holding that as a matter of law plaintiff did not establish that any alleged breach of Johnson 
Hughes was a proximate cause of injury to the minor Joseph Bradeis.
 {¶ 7} "[4.] The trial court erred in granting summary judgment for the City of Reynoldsburg.
 {¶ 8} "[5.] The trial court erred in granting summary judgment to the city by interpreting Section 2744.02 to provide the city with statutory immunity from any liability."
 {¶ 9} The plaintiff has consolidated these assignments of error into three "issues presented for review." Accordingly, we will address the assignments of error as presented by plaintiff in the issues presented for review.
 {¶ 10} A motion for summary judgment allows a court to terminate litigation where a resolution of factual or legal dispute is unnecessary. In order to obtain summary judgment, a party must establish: (1) that there is no genuine issue as to any material fact; (2) that reasonable minds can come to but one conclusion, adverse to the nonmoving party; and (3) that the party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Specifically, Civ.R. 56(C) provides:
 {¶ 11} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
 {¶ 12} In his first and second issues presented for review, plaintiff argues that defendant Johnson Hughes was negligent and that its negligence proximately caused his injuries.[1] "Liability for tortious conduct is premised upon the existence of an express duty * * * owed by the defendant to the plaintiff." Applegate v. Duncanside Park (1986), 28 Ohio App.3d 88, 90. Generally, in cases involving premises liability, the legal status of the injured party while on the land of another determines the duty of care which he is owed by the landowner. Wiley v. National Garages, Inc. (1984), 22 Ohio App.3d 57, 59. However, in Simmers v. Bentley Construction Co. (1992), 64 Ohio St.3d 642, the Ohio Supreme Court held that an independent contractor who created a dangerous condition on real property was not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn as the contractor had no property interest in the land. In this case, there is no evidence that Johnson Hughes had any property interest in the land on which Lancaster Avenue is located. Accordingly, we will examine the general law of negligence to determine Johnson's duty of care. Simmers, supra.
 {¶ 13} When making a negligence claim, three elements must be established: (1) the defendant's duty; (2) a breach of that duty; and (3) that the plaintiff's injury proximately arose therefrom. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. A duty owed to the plaintiff is fundamental to establishing actionable negligence. Id. at 142. If there is no duty, then no legal liability can arise. Id. In order to defeat a properly supported motion for summary judgment brought in a negligence action, the plaintiff must come forward with sufficient evidence to allow reasonable minds to infer that the duty was breached, and that the breach of that duty was the proximate cause of the plaintiff's injuries. However, the question of whether the defendant owes a duty of care to the plaintiff is a question of law. Mussivand v. David (1989),45 Ohio St.3d 314, 318.
 {¶ 14} In this case, whether or not Johnson Hughes owed plaintiff a duty of care depends upon the foreseeability of injury to an individual in plaintiff's position. An injury is not actionable unless it could have been reasonably anticipated as a result of the defendant's conduct. Strother v. Hutchinson (1981), 67 Ohio St.2d 282. It is not necessary for the defendant to have anticipated the precise injury giving rise to the complaint, so long as his or her act or omission is likely to result in injury. Id. Finally, an act is foreseeable if a reasonably prudent person, under the same or similar circumstances, would have anticipated an injury as a result of the act or omission. Commerce 
Industry Ins. Co. v. City of Toledo (1989), 45 Ohio St.3d 96.
 {¶ 15} In this case, Johnson Hughes maintains that it owed plaintiff a duty to warn that Lancaster Avenue was under construction and that it was closed to all but local traffic. Arguing that plaintiff was not local traffic, Johnson maintains that it owed plaintiff no further duty to protect him from dangers present within the construction site. On the other hand, the plaintiff maintains that not only was Johnson 
Hughes obligated to close the roadway to through traffic, but that it was also required to erect signs and barriers for plaintiff's benefit within the confines of the construction site.
 {¶ 16} Pursuant to R.C. 4511.11(A), local authorities in their respective jurisdictions shall place and maintain traffic control devices as are necessary to indicate and to regulate, warn, or guide traffic. R.C. 4511.12 provides that "[n]o pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer." These rules also apply to bicycles when they are operated on the roadway. See R.C. 4511.52
 {¶ 17} It is undisputed that before and during the construction of Lancaster Avenue, signs were placed notifying the public that the road was under construction and that through traffic was prohibited. Construing the evidence in favor of plaintiff, we conclude that plaintiff has failed to come forward with evidence showing that a reasonably prudent person would have foreseen: (1) that plaintiff would read and ignore the properly posted signs that the road was under construction; (2) that he would also read and ignore the mandate that the road was closed to through traffic; (3) that he would ride around barriers and through and over sections of concrete roadway which had just been poured; and (4) that he would, although admittedly seeing the expansion joint in plain view prior to riding into it, would nonetheless fail to stop. R.C. 4511.71 provides that "[n]o person shall drive upon, along, or across a street or highway, or any part thereof, which has been closed in the process of its construction, reconstruction, or repair, and posted with appropriate signs by the authority having jurisdiction to close such highway." Accordingly, plaintiff's first and second issues for review are not well-taken; therefore, his first, second and third assignments of error are overruled.
 {¶ 18} In his third issue presented for review, plaintiff argues the trial court incorrectly concluded that the city of Reynoldsburg is statutorily immune from liability.[2] Pursuant to the Political Subdivision Tort Liability Act, a three-part classification governs the liability of a political subdivision. First, under R.C. 2744.02(A)(1) there is a general grant of immunity by which "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." As relevant to this case, R.C. 2744.01(C)(1) defines a "governmental" function as:
 {¶ 19} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 {¶ 20} "(b) A function that is for the common good of all citizens of the state;
 {¶ 21} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."
 {¶ 22} R.C. 2744.01(C)(2) goes on to explain that governmental function includes, but is not limited to, the following:
 {¶ 23} "(e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds;
 {¶ 24} "* * *
 {¶ 25} "(j) The regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices;
 {¶ 26} "* * *
 {¶ 27} "(l) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement * * * [.]"
 {¶ 28} Under the first prong of the tripartite test, R.C. 2744.02(A) extends immunity to the city of Reynoldsburg, from the plaintiff's claims that it negligently maintained or repaired Lancaster Avenue. However, the immunity granted to governmental functions is not absolute and is subject to several limited exceptions set forth in R.C. 2744.02(B). In this instance, plaintiff asserts that the exception set forth in R.C.2744.02(B)(3) precludes the city from asserting immunity on the basis that the unguarded expansion joint constituted a public nuisance. That section provides that a political subdivision may be liable "for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."
 {¶ 29} In this case, plaintiff contends that the expansion joint, which was left unfinished and unguarded after a day's work, was a nuisance for which the city is liable. However, the record shows that this alleged nuisance was located well within a construction zone, which had been closed to through traffic. Additionally, there is no evidence that warning signs had been improperly placed, improperly erected, inadequately reflectorized, illegible or obstructed by overhanging foliage, or violated the Ohio Manual of Uniform Traffic Devices in any other manner. Further, our research leads us to conclude that meritorious roadway nuisance cases are those where there exists a danger within the right of way, which renders the regularly traveled portions of the road unsafe for usual and ordinary travel. Thus, we find that the trial court correctly concluded that the proper focus should be on whether a condition exists which creates a danger for ordinary traffic on the regularly traveled portion of the road. See Franks v. Lopez (1994),69 Ohio St.3d 345. To hold otherwise would allow individuals to ignore any manner or number of warning signs or barricades in road construction zones with impunity.
 {¶ 30} In this case, it is undisputed that plaintiff was not local traffic and had chosen to disobey the posted restriction because he did not want to take the extra time to ride his usual route. During the course of his deposition, plaintiff testified that his friend, Mike Schrouk, lived on Main Street, several streets away from the plaintiff's home and Lancaster Avenue. According to plaintiff, he and Mike left plaintiff's home, rode along plaintiff's street for a while, and then turned left onto a different street. The two then rode along that roadway for a distance and then turned right, rode another distance, and then turned left twice before they rode onto Lancaster Street. However, when questioned, plaintiff could not remember the names of any of these streets.
 {¶ 31} After admittedly reading and then riding past a sign notifying the public that Lancaster Avenue was closed to all but local traffic, the two rode down the length of Lancaster Avenue, and through another intersection before plaintiff's accident. During the course of his deposition, plaintiff admitted that he was aware the Lancaster Avenue was under construction. He also admitted that he knew that the road was closed to through traffic in order to complete this construction. Indeed, just prior to riding into the expansion joint, the two were riding their bicycles through wet concrete that had been poured to form the joint. In his own words, plaintiff admitted:
 {¶ 32} "Q: * * * You're turning left onto Lancaster Street [sic].
 {¶ 33} "A: Yeah.
 {¶ 34} "Q: Was there a big sign telling you that Lancaster Street [sic] was closed?
 {¶ 35} "A: Yes, it is.
 {¶ 36} "Q: Okay. So you, obviously, saw that sign.
 {¶ 37} "A: Yes.
 {¶ 38} "* * *
 {¶ 39} "Q: But it was clearly marked closed?
 {¶ 40} "A: Yes.
 {¶ 41} "* * *
 {¶ 42} "Q: Lancaster Street [sic] was closed and —
 {¶ 43} "A: Yeah.
 {¶ 44} "Q: — you knew that.
 {¶ 45} "Q: What did you tell the patrol officer when he finally showed up?
 {¶ 46} "A: I told him it was only the road closed to traffic only.
 {¶ 47} "* * *
 {¶ 48} "Q: So is it fair to say that generally you kind of were familiar with roads under repair, what they looked like?
 {¶ 49} "A: Right.
 {¶ 50} "Q: Would it be fair to say that you knew that they were kind of hazardous?
 {¶ 51} "A: Yeah, it was, but we was just trying to get a quicker way to Main Street because we didn't feel like going the back way." (Bradeis Depo., pp. 46, 48, 53 and 80.)
 {¶ 52} Pursuant to R.C. 5501.11, the state of Ohio and its political subdivisions have a responsibility to construct and maintain highways in a safe and reasonable manner. However, they are not insurers of the safety of the roads and highways but, rather, are charged with maintaining the roadways in a reasonably safe condition. Knickel v. Dept. of Transportation (1976), 49 Ohio App.2d 335.
 {¶ 53} Having carefully reviewed the record, we conclude that the trial court properly granted summary judgment in favor of the city on the basis of immunity. Accordingly, plaintiffs' third issue for review is not well-taken, and his fourth and fifth assignments of error are overruled.
 {¶ 54} For the reasons set forth herein, plaintiff's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and DESHLER, JJ., concur.
[1] Plaintiff argues that these issues relate to his first, second and third assignments of error.
[2] Plaintiff argues that this issue relates to the fourth and fifth assignments of error.