ing," and thus definitely mentioned issue "of his body" and "adopted child." This case was fully considered and distinguished in *Cochrel* v. *Robinson, supra,* as was also the case of *Kroff* v. *Amrhein,* 94 Ohio St., 282, 114 N. E., 267, which latter case, in the opinion of the writer, is in reality more in harmony with and in support of the holdings in *Cochrel* v. *Robinson,* and *Surman* v. *Surman, supra,* than inconsistent with and distinguishable from them.

It, therefore, follows that George V. Miller did not die intestate, "without issue," and that the fund in question descends from him to the defendant Louella Miller Shepard as personal property under Section 8578, General Code.

*Decree accordingly.*

WASHBURN, P. J., and PARDEE, J., concur.

HAGER *v.* THE CLEVELAND TRUST CO.

34

(Decided January 24, 1928.)

Mr. Joseph B. Keenan, for plaintiff in error.

Messrs. Dustin, McKeehan, Merrick, Arter & Stewart, and Mr. Neil P. Beall, for defendant in error.

MILLS, J. Plaintiff, Hager, prosecutes error from a judgment of the court of common pleas of Cuyahoga county, where he filed his petition, seeking damages from the defendant trust company for personal injuries.

In his petition he alleged that the defendant in the course of its operation of a certain building owned by it in the city of Cleveland had "provided lavatories for those occupying the premises and such persons who were authorized or invited to use said premises by the tenants thereof"; that, while plaintiff, in pursuance of his occupation as contracting painter, was engaged in doing painting

in the premises occupied by the Wilson Florist Company, in the interior of the ground floor of said building, he had cause to make use of a bowl maintained and operated by the defendant in a lavatory on said floor; that, while he was occupying the bowl, and immediately after he had pressed down the plunger attached thereto, there rushed into the bowl, from the pipes leading thereto, a sudden and violent eruption of steam, which scalded him and violently projected him from the bowl, causing other bodily injuries as set forth in the petition; and that said injuries were the result of the negligence of the defendant.

The petition also contained the following specific allegations of negligence:

"(1) That the defendant caused said bowl to be connected with pipes in such a fashion that the steam emanating from the hot water system in said building would be projected into said bowl upon the pressure of the plunger thereto attached.

"(2) That defendant carelessly and negligently permitted said bowl to remain in an unsafe condition for those, including the plaintiff, having a right to use and occupy the same.

"(3) That the defendant carelessly and negligently failed to warn or apprise this plaintiff of the danger of occupying said bowl while it was in such an unsafe condition, or while the defendant in the exercise of ordinary care for this plaintiff and others having a right to use and occupy said bowl should have known that said bowl was in said unsafe condition."

Defendant's answer admitted its ownership and operation of the building, but denied every other material allegation of the petition.

The jury returned a verdict for the defendant. Plaintiff's motion for a new trial was overruled, and judgment was entered for the defendant, to all of which plaintiff excepted.

The evidence disclosed that the defendant occupied a portion of its building for banking and operating purposes, and leased other portions to tenants. The Wilson Florist Company was one of these tenants, occupying one of the storerooms, together with the basement thereunder, by virtue of a lease. By the terms of this lease, the defendant was required to furnish steam heat and hot and cold water. An adjacent storeroom, with its basement, was leased to the Mint Restaurant Company, which, by the terms of its lease, was to receive its steam heat and its cold water supply from the defendant, but was to "make its own arrangement for hot water heater."

The plumbing in the building included numerous toilet and other fixtures, in both ground floor and basement. Defendant's main cold water supply pipe entered the building at the basement and ran under the basement ceiling, with risers and other branches to supply all the plumbing fixtures in the building.

Steam for heating was generated in a coal-burning boiler operated by defendant in the basement of that part of the building which it retained for its own occupancy. In this basement the defendant also maintained and operated a coal-burning hot water heater, from which was circulated the hot water which the defendant supplied to all tenants other than the restaurant company.

The toilet room in which the plaintiff claims to

have received his injuries was part of the premises leased to the florist company. It contained no hot water pipes or steam radiator, and no other plumbing fixtures except the toilet bowl in question. The flushing device for this bowl, a flushometer valve, was fed from a cold water connection which led from the defendant's main cold water supply pipe to a place of concealment in the wall back of the bowl.

Before entering into possession under the lease, the Mint Restaurant Company, with the permission of the bank, installed a hot water tank and a gas-burning hot water heater in the basement covered by its lease. The tank, which served as a reservoir for the water that circulated through this heater, was connected with the defendant's main cold water supply pipe. Defendant's boiler and defendant's hot water heater were also connected with that supply pipe.

It was possible for either of these two hot water heaters to generate enough steam to fill its own circulating tank, whence the steam so generated could pass through the defendant's cold water supply pipe to the toilet bowl, upon the opening of the valve connected with that bowl.

At the close of plaintiff's testimony, the defendant moved for a directed verdict in its favor. This motion was overruled, and we think properly so; but the defendant, having noted an exception at the time, now presses the point.

Before the defense went forward in chief, the plaintiff amended his specification numbered 1, so as to aver that the steam in question emanated from the "steam system in said building."

At the close of all the testimony, defendant again moved for a directed verdict, and excepted to the court's refusal to grant this motion. Defendant contends that, with the first specification of negligence thus amended, there was at the close of all the testimony no evidence to support any of the three numbered specifications of negligence, and that therefore plaintiff utterly failed to make out a case under the pleadings. These two points will be treated together.

Section 11345 of the General Code requires that pleadings be liberally construed. We are of the opinion that, so construed, plaintiff's petition, exclusive of the specific allegations of negligence, stated a good cause of action under the rule of *res ipsa loquitur*. We are also of the opinion that the specific allegations of negligence were not so inconsistent with a reliance upon that rule as to confuse the defendant or to remove the operation of the rule. We hold that the allegations of the petition, and the evidence offered in support thereof, both before plaintiff rested, and at the close of all the testimony, called for the application of the rule of *res ipsa loquitur* as that rule is laid down in the recent case of *Glowacki* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486. In *Wardman* v. *Hanlon*, 52 App. D. C., 14, 280 F., 988, 26 A. L. R., 1249, the landlord was sued by the wife of a tenant for injuries caused by steam which escaped from a toilet bowl in the tenant's apartment in a building owned and operated by the landlord. The court, citing *Sweeney* v. *Erving*, 228 U. S., 233, 33 S. Ct., 416, 57 L. Ed., 815, Ann. Cas., 1914D, 905, and noting that the water supply and the pipes

through which the water was conveyed were under the exclusive control of the landlord, held that the accident and the circumstances under which it occurred brought the case within the rule of *res ipsa loquitur*.

We do not agree with the defendant's contention that this case comes within the principle of the decision in *Burdick* v. *Cheadle*, 26 Ohio St., 393, 20 Am. Rep., 767. In *Davies* v. *Kelley*, 112 Ohio St., 122, 146 N. E., 888, the rule is stated that, where a landlord provides and maintains in his building a hallway or other approach, and retains possession and control of it for the use of himself in common with one or more of his tenants, it is his duty to exercise ordinary care to keep it in reasonably safe condition, and he owes such duty, not only to each tenant for whose use the approach is maintained, but also to the employees, guests, and invitees of such tenant. In *Wardman* v. *Hanlon, supra,* the court held that the rule making a landlord liable for failure to exercise ordinary care to keep hallways and stairways in reasonably safe condition is "by a parity of reasoning" equally "applicable to the landlord who retains exclusive control of the supply of water for toilet purposes," and binds such landlord to exercise reasonable care to prevent steam or scalding water from going through the pipes.

We hold, therefore, that the present case was a proper one for submission to the jury.

The trial judge charged the jury that the plaintiff was "a licensee on the premises of the defendant," taking his license subject to its attendant perils and risks, under the rule laid down in *Hannan, Admx.,* v. *Ehrlich,* 102 Ohio St., 176, 131 N. E.,

504. We think this was reversible error. In *Von-denberger* v. *Schaaf, Exrx.,* 13 Ohio App., 285, it is said:

"The general rule is that, if one comes upon the premises of the owner, with his consent, for some purpose in which the owner may be interested, the owner would be held to have invited the other, either by express or implied invitation."

The plaintiff certainly entered upon the premises of the Wilson Florist Company as an invitee of that company. There is no evidence that he ceased to be an invitee upon entering the toilet room, or that he lost his rights as such by entering it. The accident occurred during working hours. There is no intimation that the florist company had not given him an implied permission to use the toilet. The question here is analogous to those which turn on the continuity of employment in cases under Workmen's Compensation Acts. In the case of *Holland-St. Louis Sugar Co.* v. *Shraluka,* 64 Ind. App., 545, at page 549, 116 N. E., 330, 331, the court says:

"Such acts as are necessary to the life, comfort, and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment."

That case, and other cases declaring the same principle, were cited by this court in *Taylor* v. *Industrial Commission,* 13 Ohio App., 262. In line with that principle, we hold that plaintiff was an invitee of the Wilson Florist Company at the time he received his injuries.

Plaintiff complains that the trial court withdrew

plaintiff's second and third specific allegations of negligence from the consideration of the jury, and instructed the jury that they were to find for the defendant unless they found that the defendant was negligent in the particular manner set out in the plaintiff's amended first specification of negligence. We think this was error, for the reason, as we have said, that this case was one that was proper to go to the jury under the doctrine of *res ipsa loquitur*.

Plaintiff complains of the following portion of the charge given to the jury:

"Without in any manner intending to comment upon the evidence, but because there has been some testimony with respect to a certain hot water heater in the restaurant, I say to you that the defendant in this case is not liable for any errors of construction or defects in the restaurant's hot water apparatus, nor for any neglect on the part of the restaurant people in their operation of the same, if you should find such defect or such careless operation."

This charge was erroneous because it took from the consideration of the jury the question of fact as to whether or not defendant was negligent in permitting a defective or an improperly constructed apparatus to be connected with its main cold water supply pipe.

In *City of Piqua* v. *Morris,* 98 Ohio St., 42, 120 N. E., 300, 7 A. L. R., 129, our Supreme Court has said:

"The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence."

The court also charged the jury:

"I also say to you that if, from the evidence, you are unable to determine whether the accident was caused by the negligence of the restaurant or the negligence of the bank, in that event your verdict should be for the defendant."

This charge taken in connection with the foregoing was misleading, as tending to confirm the jury in the belief that the concurrent negligence of the restaurant would relieve the defendant of its liability for negligence proximately causing the injuries.

The plaintiff complains of the following evidence, introduced in chief by defendant in the examination of one of its expert witnesses:

"Q. Now, Mr. Lindsay, I will ask you whether or not it is possible to generate steam in the gas hot water in the restaurant? A. He can get that up to a boiling point and generate steam."

This testimony was objectionable, for the reason that the apparatus in question, though capable of generating steam, might not have been capable of generating sufficient steam to overflow the tank and escape into the bowl. Under the rule enunciated in *Ohio & Indiana Torpedo Co.* v. *Fishburn,* 61 Ohio St., 608, 56 N. E., 457, 76 Am. St. Rep., 437, this witness, as an expert, was not restricted to giving an opinion of such small probative value as the one given here. However, the question has become a moot one in this case, because the witness subsequently testified that the heater could under certain conditions force steam into the main cold water supply pipe and up to the bowl.

In the testimony in chief of the same expert witness, the following occurs:

"Q. In your experience, have you encountered cases of hot water being generated in gas-heating tanks? A. One happened about fifteen weeks ago."

Even in those cases where evidence of similar occurrences is admissible to show the tendency of a machine, the question should be limited to cases where the machine was operated under practically the same conditions as those which existed in the case under inquiry. 1 Wigmore on Evidence (2d Ed.), Section 451, and cases there cited. This question does not meet those requirements. It was improper because it involved collateral issues, under the ruling in *Western Ins. Co.* v. *Tobin,* 32 Ohio St., 77.

In his examination in chief, the witness Lindsay, who had installed the heating apparatus in the restaurant, was asked by the defendant whether it was installed "in accordance with the ordinances and building code of Cleveland." He answered: "Yes."

This testimony was erroneously admitted. Section 4235, General Code, provides how municipal ordinances shall be proven. This ordinance had not been introduced, and there was nothing in the record to show that compliance with any requirement of the ordinance had caused the steam to escape into the bowl, or that the regulations of the ordinance were otherwise relevant to the issue.

We find no other prejudicial error.

The court's charge on the doctrine of *res ipsa loquitur* was not prejudicial to the plaintiff, and his objections thereto have been answered by the rule enunciated in the *Glowacki case, supra.*

44

For errors in the record, as above set forth, it is ordered that the judgment heretofore rendered in this case be reversed, and the cause may be remanded for a new trial.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., and CUSHING, J., concur.

Judges of the First Appellate District, sitting in place of Judges SULLIVAN, VICKERY and LEVINE of the Eighth Appellate District.