OPINION
{¶ 1} Appellants, Elaine M. and Donald G. Lumley, appeal from the August 30, 2007 judgment entry of the Portage County Court of Common Pleas granting the motion for summary judgment of appellees, Marc Glassman, Inc. and Marc Glassman, Inc., d.b.a. Marc's (collectively "Marc's"). For the foregoing reasons, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} On March 27, 2004, appellants visited a Marc's grocery store to purchase groceries. Marc's is owned and operated by Marc Glassman, Inc. After shopping at the store for approximately one hour, appellants walked to the frozen food section, since Marc's was having a sale on frozen pizzas. The frozen pizzas were stored in an open freezer. Metal guards were attached to the base of the freezer, at the corners, leaving a small gap between the metal guards and the freezer.
 {¶ 3} When Elaine arrived at the open freezer containing the pizzas, she observed two empty, wooden pallets that had been stacked directly in front of the freezer. The wooden pallets had been stacked so there was approximately a one-foot aisle to gain access to the frozen pizzas. The wooden pallets were used by the employees of Marc's to transport merchandise from the warehouse to the store floor for stacking on the shelves.
 {¶ 4} To purchase the frozen pizzas, Elaine moved into the one-foot space with her right foot. Her right foot caught under the wooden pallet, throwing her forward. She stepped with her left foot, which caught in the metal brace of the freezer. Elaine's body pitched forward, and she grabbed the freezer with her right hand. As she grabbed the freezer, she felt a pull in her right shoulder. Appellants allege that this fall caused Elaine to suffer a torn rotator cuff, which required surgery.
 {¶ 5} Elaine contacted Marc's to seek compensation for her injuries. An employee of Marc's sent Elaine a medical authorization directed to Akron General Hospital, which she signed. Later, Marc's sent Elaine two additional medical authorizations directed to her physicians. In response to the medical authorizations, the *Page 3 
medical providers produced more than 450 pages of Elaine's medical records, dating back to the early 1990s.
 {¶ 6} Appellants have timely appealed from the trial court's judgment, raising three assignments of error for review.
 {¶ 7} Appellants' first assignment of error states:
 {¶ 8} "The trial court erred in granting Appellee Marc's, et al., motion for summary judgment on Appellants' claims for personal injury related to a fall in Marc's store on March 27, 2004."
 {¶ 9} In granting summary judgment in favor of Marc's, the trial court stated: "[t]he [appellants] have offered no evidence from which it could be reasonably concluded that Marc's either created an unreasonably dangerous or hazardous condition or that the condition was other than an expected, open and obvious condition."
 {¶ 10} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." Welch v.Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 40.
 {¶ 11} In order for a motion for summary judgment to be granted, the moving party must prove:
 {¶ 12} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to *Page 4 
the party against whom the motion for summary judgment is made."Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385. (Citation omitted.)
 {¶ 13} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact * * *." Civ. R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, quoting Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 14} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ. R. 56(E). Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Civ. R. 56(E), provides:
 {¶ 15} "When a motion for summary judgment is made and supported asprovided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." (Emphasis added.)
 {¶ 16} Summary judgment is appropriate pursuant to Civ. R. 56(E), if the nonmoving party does not meet this burden.
 {¶ 17} Appellate courts review a trial court's entry of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no *Page 5 
genuine issues exist for trial." Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, 383, citing Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 119-120.
 {¶ 18} To establish a claim for negligence, appellants must prove: "`(1) that appellee owed a duty to appellant; (2) that appellee breached that duty; (3) that appellee's breach of duty directly and proximately caused appellant's injury; and (4) damages.'" Wike v. Giant Eagle,Inc., 11th Dist. No. 2002-P-0049, 2003-Ohio-4034, at ¶ 14, quotingKornowski v. Chester Properties, Inc. (June 30, 2000), 11th Dist. No. 99-G-2221, 2000 Ohio App. LEXIS 3001, at *7. The duty of the defendant, however, "depends on the relationship between the parties and the forseeability of injury to someone in the plaintiff's position."Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 645. (Citations omitted.)
 {¶ 19} The parties do not dispute Elaine's status as an invitee. "[B]usiness invitees are those persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." Baldauf v. Kent State Univ. (1988),49 Ohio App.3d 46, 47. Also, an invitee is anyone who is expressly or impliedly invited to come upon the premises. Englehardt v. Philipps (1939),136 Ohio St. 73, 77. "The general rule is that if one comes upon the premises with the owner's consent, for some purpose in which the owner may be interested, he is deemed to have been expressly or impliedly invited." Blair v. Ohio Dept. of Rehab. Corr (1989),61 Ohio Misc.2d 649, 654, citing Hager v. Cleveland Trust Co. (1928), 29 Ohio App. 32.
 {¶ 20} In Baldauf v. Kent State Univ., the Tenth Appellate District noted that, "`[i]n order to recover from the occupier of premises for personal injuries sustained in a fall claimed to have been caused by the condition of those premises, a business invitee *Page 6 
must allege and prove that the fall was proximately caused by someunreasonably dangerous condition of the premises.'" Baldauf v. KentState Univ., 49 Ohio App.3d at 48, quoting Smith v. United Properties,Inc. (1965), 2 Ohio St.2d 310, 316. (Taft, C.J., dissenting.) (Emphasis added by Tenth District.) In addition, the plaintiff must prove the defendant was aware or on notice of the unreasonably dangerous condition. Butch v. Univ. of Cincinnati (1997), 90 Ohio Misc.2d 28, 30. "Even in those instances in which actual or imputed notice of a defect is not required, it is first necessary to establish that an unreasonably dangerous condition, i.e., a duty, actually did exist." Bond v.Mathias (Mar. 17, 1995), 11th Dist No. 94-T-5081, 1995 Ohio App. LEXIS 979, at *8. (Citation omitted.)
 {¶ 21} On appeal, appellants advance the following theories as to why the trial court erred in granting Marc's motion for summary judgment: (1) a genuine issue of material fact remains as to whether Elaine was injured by a dynamic or static condition on the premises; (2) the open and obvious doctrine is not applicable because Marc's invited Elaine "into the danger zone because the only means of access to a sale item require[d] [her] to negotiate the hazard, not avoid it;" (3) attendant circumstances affected and impeded her ability to "observe, recognize, and appreciate the combination of hazardous conditions," negating the open and obvious doctrine; (4) there are genuine disputes as to whether Marc's violated the Ohio Building Code; and (5) there are genuine issues of material fact as to whether the hazards encountered by Elaine were open and obvious.
 {¶ 22} First, we will consider appellants' contention that the open and obvious doctrine is not applicable in the present case since a genuine issue of material fact *Page 7 
remains as to whether Elaine was injured by a dynamic or static condition on the premises.
 {¶ 23} Under the "open and obvious" doctrine, the owner of a premises does not owe a duty to persons entering those premises with regard to dangers that are open and obvious. Sidle v. Humphrey (1968),13 Ohio St.2d 45, 48. (Citations omitted.) See, also, Armstrong v. Best Buy Co.,Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 13. "`[T]he open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" Armstrong, supra, at ¶ 5, quoting Simmers v. BentleyConstr. Co., 64 Ohio St.3d at 644. When the "open and obvious" doctrine is applicable, it "obviates the duty to warn and acts as a complete bar to any negligence claims." Armstrong, supra, at ¶ 5.
 {¶ 24} We recognize that the law, when determining whether a danger is open and obvious, utilizes an objective, not subjective standard. "The fact that appellant herself was unaware of the hazard is not dispositive of the issue. It is the objective, reasonable person that must find that the danger is not obvious or apparent." Goode v. Mt. Gillion BaptistChurch, 8th Dist. No. 87876, 2006-Ohio-6936, at ¶ 25.
 {¶ 25} "Premises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims averring active negligence by act or omission." Simmons v. Am. Pac. Ent., LLC, 164 Ohio App.3d 763,2005-Ohio-6957, at ¶ 20.
 {¶ 26} "The distinction between static and dynamic forms of negligence is legally significant, because it directly correlates to the two separate and distinct duties an *Page 8 
occupier owes its business invitees: (1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while (2) active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises." Id. (Citation omitted.) The open and obvious doctrine applies only to static conditions. Id. at ¶ 23.
 {¶ 27} As noted by the Simmons Court, a lapse of time may be significant in determining whether a static condition exists on the premises. Simmons, supra, at ¶ 22. "Further, there are many cases in which the open and obvious doctrine applied and apparently no active negligence was found relative to various display and merchandise stocking-type equipment left on the store floor. See, Silbernagel v.Meijer Stores Ltd. Partnership, 12th Dist. No. CA2006-02-040,2006-Ohio-5658 (display frame); Colvin v. Kroger Co., Inc., 12th Dist. No. CA2005-07-026, 2006-Ohio-1151 (flat-loading Kroger cart, also called a u-boat); Sopko v. Marc Glassman, Inc. (Apr. 30, 1999), 11th Dist. No. 98-L-006, 1999 Ohio App LEXIS 2021 (an empty `end cap' display);Austin v. Woolworth Dept. Stores (May 6, 1997), 10th Dist. No. 96APE10-1430, 1997 Ohio App. LEXIS 1970 (partially empty display pallet)." Black v. Discount Drug Mart, Inc., 6th Dist. No. E-06-044,2007-Ohio-2027, at ¶ 12.
 {¶ 28} Upon a review of the evidence in this case, we find no genuine issue of material fact as to whether Elaine was injured by a dynamic or static condition of the premises, and this argument is without merit.
 {¶ 29} Second, appellants argue that the open and obvious doctrine is not applicable because Marc's invited Elaine "into the danger zone because the only means *Page 9 
of access to a sale item require[d] [her] to negotiate the hazard, not avoid it." Appellants claim that by intentionally displaying the pizza in a manner that invited customers to negotiate the one-foot aisle way, Marc's breached its duty and, thus, the trial court erred in awarding summary judgment in favor of Marc's.
 {¶ 30} To support this argument, appellants claim that the Supreme Court of Ohio, in Simmers v. Bentley Constr. Co., 64 Ohio St.3d at 644, "declined to apply the open-and-obvious doctrine where defendant created an unreasonable hazardous condition." However, the Simmers Court declined to apply the open and obvious doctrine to an independent contractor who did not have a property interest in the premises, noting that the doctrine is applicable to "a landowner's duty to persons entering the property ***." Id. at 645. The Supreme Court of Ohio further stated that "[the Simmers case] does not put at issue the `open and obvious' doctrine as applied to owners and occupiers of land." Id. at fn. 2. Therefore, appellants' reliance upon Simmers is entirely erroneous.
 {¶ 31} Appellants also cite to Mayweather v. Rite Aid Corp., 5th Dist. No. 2002CA00160, 2002-Ohio-6406, for the proposition that the open and obvious doctrine is not applicable when the appellant was invited into a zone of danger by the appellee. However, this case cited to by appellants is inapposite to the instant case. In Mayweather, a customer had provided notice to the appellee that the contents of an exercise ball had been spilled in an aisle. Id. at ¶ 25. The appellee's employees then placed warning signs at each end of the aisle, and one employee swept and mopped the aisle. Id. Upon inquiry of the appellant, one of the appellee's employees actively invited the appellant into the "danger zone" by waving her into the area where the spill *Page 10 
had occurred. Id. at ¶ 26. In the instant case, however, Elaine was not invited into the "zone of danger" by Marc's. In fact, Elaine's deposition testimony demonstrates that the wooden pallets stacked in front of the display freezer were an open and obvious hazard. The following deposition testimony between Elaine and the attorney for Marc's is illustrative of that matter:
 {¶ 32} "Q: When you came to the freezer that held the pizzas, how did you know the pizzas were in the freezer?
 {¶ 33} "A: There was a sign for the sale.
 {¶ 34} "Q: All right. And I take it then you looked down into the freezer and saw the merchandise?
 {¶ 35} "A: Right.
 {¶ 36} "Q: All right. At that point did you see the skids?
 {¶ 37} "A: Yes.
 {¶ 38} "* * *
 {¶ 39} "Q: Okay. Did you have any problems seeing the color of the skids?
 {¶ 40} "A: No.
 {¶ 41} "Q: Did you have any problem seeing the color of the floor?
 {¶ 42} "A: No.
 {¶ 43} "* * *
 {¶ 44} "Q: When you walked around the skids, did you have any difficulty in apprehending and visualizing and seeing the skids on the floor?
 {¶ 45} "A: No.
 {¶ 46} "* * * *Page 11 
 {¶ 47} "Q: Okay. If you would have looked down at that point you could have clearly seen the space between the skids and the freezer, could you not have?
 {¶ 48} "A: Yes."
 {¶ 49} Further, appellants go to great lengths in their brief to argue that the only means to gain access to the frozen pizzas was by Elaine retrieving them herself. However, in her deposition, Elaine testified that she did not ask any of the clerks employed by Marc's for assistance. In fact, when asked why she did not ask for assistance, Elaine replied:
 {¶ 50} "Because I'm an independent person and felt there was a way to get those pizzas with the amount of space they had left there even though the skids were impending [sic] my progress."
 {¶ 51} The record supports the fact that Elaine observed the wooden pallets, and the wooden pallets were not concealed or hidden from view. As such, reasonable minds could only conclude that the wooden pallets were an open and obvious danger and, thus, Elaine could have avoided the incident. This argument is not well-taken.
 {¶ 52} Next, appellants present a list of four attendant circumstances that they claim create a genuine issue of material fact as to whether the danger was open and obvious. First, appellants argue that the wooden pallets permitted a one-foot aisle way, which "appeared to be an open walkway, providing safe ingress to and egress from the freezer." Second, the wooden pallets, in combination with the metal guards placed on the corners of the freezer being identical in color to the flooring, obscured Elaine's view of the guards placed on the freezer. Third, the sale signs for the pizza distracted Elaine's attention from the floor. Finally, the store was busy, and her husband was to *Page 12 
her immediate right and another customer was behind her. Appellants advocate that "this combination of conditions was unusual, out of the ordinary, and unexpected to [her]."
 {¶ 53} "While `there is no precise definition of "attendant circumstances" * * * they generally include "any distraction that would come to the attention of a pedestrian in the same circumstances and [reduce] the degree of care an ordinary person would exercise at the time."'" Klauss v. Marc Glassman, Inc., 8th Dist. No. 84799,2005-Ohio-1306, at ¶ 20. (Citation omitted.) "The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." Cummin v. Image Mart, Inc., 10th Dist. No. 03AP-1284, 2004-Ohio-2840, at ¶ 8. Moreover, "[t]he attendant circumstances must, taken together, divert the attention of the [appellant], significantly enhance the danger of the defect, and contribute to the fall. * * * Both circumstances contributing to and those reducing the risk of the defect must be considered." Stockhauser v.Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29, 33-34. (Internal citations omitted.)
 {¶ 54} In the present case, there are no attendant circumstances that would allow appellants to avoid the application of the open and obvious doctrine. First, the wooden pallets were not hidden; Elaine testified in her deposition that they were clearly visible to her. While Elaine attempts to question the visibility of the freezer guard, it is undisputed that she tripped over the wooden pallets, which she observed. Second, although Elaine alleges that the sale signs distracted her attention from the floor by the freezer, she does not offer any evidence that demonstrates the signs rendered the premises unsafe. *Page 13 
See, e.g., Yocono v. Rite Aid Corp. (Sept. 29, 1993), 9th Dist. No. 16065, 1993 Ohio App. LEXIS 4822, at *4-5; McGuire v. Sears, Roebuck Co. (1996), 118 Ohio App.3d 494, 498-500. Third, Elaine could have reasonably anticipated the presence of other persons shopping in a grocery store on a Saturday afternoon, as well as persons near her. None of the circumstances cited by appellants rise to the level of creating an abnormal condition, thereby reducing the degree of care an ordinary person would exercise or unreasonably increase the normal risk of a harmful result.
 {¶ 55} Appellants' argument is not well-taken. Reasonable minds could come to only one conclusion, which is adverse to appellants; the attendant circumstances cited do not obviate the application of the open and obvious doctrine.
 {¶ 56} Appellants also claim that the one-foot space created between the freezer and the wooden pallets constituted a violation of the Ohio Building Code and such violation precludes summary judgment. To support this assertion, appellants attached to their memorandum in opposition of Marc's motion for summary judgment the affidavit of Dr. David W. Smith, a registered architect. In this affidavit, Dr. Smith averred that Marc's violated the Ohio Building Code by (1) obstructing the means of egress through the placement of the wooden pallets and (2) not complying with the required minimum aisle width by placing the wooden pallets approximately one foot from the freezer.
 {¶ 57} Upon review, the trial court determined that the "purported expert opinion [was] of no value," since "the assumptions and conclusions in the architect's affidavit [were] clearly wrong." In its judgment entry, the trial court stated:
 {¶ 58} "The affidavit misrepresents that a pallet placed in an aisle is a violation of the Ohio Building Code. *Page 14 
 {¶ 59} "The affidavit first cites Ohio Building Code, Section 1003.2.8, which provides that the aisle way `shall not be interrupted by any building element.' The affidavit goes on to essentially equate a pallet with a `building element.' The architect then concludes that a pallet is an obstruction under that section of the Code. The architect's conclusion, of course, is clearly erroneous.
 {¶ 60} "Next, the affidavit cites Section 1004.3.1.1., which requires an aisle width of at least 44 inches. The affidavit goes on to conclude that since the distance between the pallets and the food display freezer was only about one foot, the pallet violated the Code. When viewed in context, it is clear the 44 inches of aisle width stated in the Code is really a measurement between fixtures, such as the food display freezer, and table, chairs, and other display equipment on either side of an aisle. Pallets used for delivery of goods to stock shelves are not part of measuring the total aisle width for purposes of the Code."
 {¶ 61} This court cannot agree with appellants that the trial court drew conclusions that should be left to a jury. In this case, the trial court correctly determined that the Ohio Building Code was inapplicable. In addition, while appellants assert that Marc's did not provide expert evidence to contradict its expert's affidavit, Marc's was not required to submit an opposing affidavit under Civ. R. 56(E). Filipovic v.Dash, 5th Dist. Nos. 2005CA00209 2005CA00211, 2006-Ohio-2809, at ¶ 52.
 {¶ 62} Appellants also maintain that even if the open and obvious doctrine is applicable in the instant case, "genuine issues of material fact [exist] as to whether or not the hazards encountered by Elaine were open and obvious." Elaine argues that she was unable to observe the small gap between the metal guards and the freezer and *Page 15 
"had [her] left front foot not got caught in [this] gap, she probably would not have fallen * * *." However, as described by Elaine in her deposition, she initially tripped over the wooden pallets, which we have determined constituted an open and obvious condition. The evidence of record reveals that Elaine was fully aware of the wooden pallets and the passageway they created; yet, she chose to negotiate this pathway. Further, in a summary judgment exercise, it is not appropriate for appellants to craft hypothetical situations that create a genuine issue of material fact. As such, this argument does not warrant merit.
 {¶ 63} After reviewing the evidence in a light most favorable to appellants, we determine that this case is governed by the open and obvious doctrine and the trial court did not err in granting Marc's motion for summary judgment. Clearly, the wooden pallets were open and obvious and, therefore, Marc's is absolved from "taking any further action to protect [Elaine]," Marc's owed no duty to Elaine, and Marc's is entitled to judgment as a matter of law. Armstrong, supra, at ¶ 13.
 {¶ 64} Appellants' first assignment of error is without merit.
 {¶ 65} Appellants' second and third assignments of error state:
 {¶ 66} "[2.] The trial court erred in granting Appellee Marc's, et al., motion for summary judgment on Appellants' claims for inducement of unauthorized, unprivileged disclosure of confidential medical information.
 {¶ 67} "[3.] The trial court erred in granting Appellee Marc's, et al., motion for summary judgment on Appellants' claims for negligent misrepresentation and/or fraud in obtaining Appellant's confidential medical information." *Page 16 
 {¶ 68} Since appellants' second and third assignments of error are interrelated, we will consider them together.
 {¶ 69} First, appellants maintain that Marc's is liable underBiddle v. Warren Gen. Hosp. (1999), 86 Ohio St. 3d 395. InBiddle, the Supreme Court of Ohio recognized that a separate tort exists for a breach of confidentiality related to medical information. TheBiddle Court stated:
 {¶ 70} "We hold that a third party can be held liable for inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship. To establish liability the plaintiff must prove that: (1) the defendant knew or reasonably should have known of the existence of the physician-patient relationship; (2) the defendant intended to induce the physician to disclose information about the patient or the defendant reasonably should have anticipated that his actions would induce the physician to disclose such information; and (3) the defendant did not reasonably believe that the physician could disclose that information to the defendant without violating the duty of confidentiality that the physician owed the patient.'" Id. at 408. (Citation omitted.)
 {¶ 71} As the trial court recognizes in its judgment entry, Elaine voluntarily signed the medical releases, which gave both the medical providers and Marc's personnel an assurance that the medical records could be provided without any violation of confidentiality. Further, a review of the medical authorizations releasing the records provides that disclosure of the records was authorized. While Elaine maintains that Marc's induced the disclosure of confidential medical records, her deposition reveals that while she did not review the medical authorizations, she did voluntarily sign them. *Page 17 
Further, she was aware that the medical authorizations were for the release of her medical records. At the deposition, Elaine testified to the following:
 {¶ 72} "Q: * * * We know that Mrs. Meluch didn't tell you that they were just for after the accident, correct?
 {¶ 73} "A: Correct.
 {¶ 74} "Q: Was there anything in the writing of these documents that lead you to believe they were just for after the accident?
 {¶ 75} "A: I didn't read them.
 {¶ 76} "* * *
 {¶ 77} "Q: Do you see in Paragraph 4 that the authorization says that it will expire one year from the date written below?
 {¶ 78} "A: I did not read that but I read it now.
 {¶ 79} "Q: All right. In Paragraph 5, do you see where it says, "Once certain information is disclosed pursuant to this authorization, it is subject to re-disclosure by the recipient?
 {¶ 80} "A: I did not read that at the time.
 {¶ 81} "* * *
 {¶ 82} "Q: Okay. Now, you knew that you could receive treatment for your injuries without signing this authorization, didn't you?
 {¶ 83} "A: I had no idea what this authorization included. I see, "My refusal to sign will not affect my ability to obtain treatment." I read that now, I did not read this whole thing.
 {¶ 84} "* * * *Page 18 
 {¶ 85} "Q: All right. Prior to today have you ever read this authorization completely?
 {¶ 86} "A: No."
 {¶ 87} Construing the evidence most strongly in favor of appellants, we find that the trial court did not err in granting summary judgment in favor of Marc's, as Elaine has not provided any evidence supporting her claim under Biddle. The third prong of Biddle cannot be met since, with signed authorizations, the medical providers would not be violating any duty of confidentiality or privilege.
 {¶ 88} In addition, appellants also contend that "[w]hether or not Appellee Marc's medical authorizations were invalid under HIPAA and state law raises genuine disputes over issues of material facts precluding summary judgment." In their brief, appellants maintain that "under HIPAA, a patient can waive his or her patient/physician privilege by expressly permitting the use and disclosure of medical records only through the use of a valid authorization." (Emphasis sic.)
 {¶ 89} The purpose of the Health Insurance Portability and Accountability Act (HIPAA) is to prevent the disclosure of protected health information by health care providers, except under certain exemptions as required by law. Section 164.502, Title 45., C.F.R.
 {¶ 90} "HIPAA provides for both civil and criminal penalties to be imposed upon individuals who improperly handle or disclose individually identifiable health information. * * * However, the law specifically indicates that the Secretary of Health and Human Services shall pursue the action against an alleged offender, not a private individual. * * * Therefore, causes of action brought by private individuals must be dismissed. * * *." *Page 19 Chamat v. Paulson (S.D.Ca. 2008), No. 07-CV-1010 W (JMA), 2008 U.S. Dist. LEXIS 55973, at *24-25. (Internal citations omitted.)
 {¶ 91} Therefore, based upon HIPAA, the trial court did not err when it concluded that since Elaine had not initially submitted her claim to the Secretary of Health and Human Services, she was precluded from litigating the claim in the trial court and, thus, her claim against Marc's for any violation of the federal statute must be dismissed.
 {¶ 92} Based on the foregoing, appellants' second and third assignments of error are without merit.
 {¶ 93} The judgment of the Portage County Court of Common Pleas is hereby affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.