[Cite as *Armstrong v. Lakes Golf & Country Club, Inc.*, 2018-Ohio-1018.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| SCOTT ARMSTRONG, et al. | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiffs-Appellants | Hon. Patricia A. Delaney, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 17 CAE 08 0054 |
| LAKES GOLF and COUNTRY CLUB, INC. | |
| | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No. 16 CVC 07 0401


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     March 19, 2018


APPEARANCES:

For Plaintiffs-Appellants

GARTH G. COX
HARRIS, McCLELLAN, BINAU
& COX, PLL
37 West Broad Street, Suite 950
Columbus, Ohio 43215

For Defendant-Appellee

MICHAEL J. MCLANE
140 East Town Street
Suite 1015
Columbus, Ohio 43215

*Wise, P. J.*

{¶1} Plaintiffs-Appellants Scott Armstrong and Julie Armstrong appeal the July 14, 2017, decision of the Court of Common Pleas, Delaware County, which granted summary judgment in favor of Appellee Lakes Golf and Country Club, Inc.

## STATEMENT OF THE FACTS AND CASE

{¶2} The following statement of the facts is taken from the trial court's 7/14/17 Judgment Entry:

{¶3} This case arises from a knee injury that Lakes member Scott Armstrong sustained when he stepped into a valve box between the parking lot and the patio bar at the Lakes on September 19, 2014. (Complaint ¶5-6; Scott Armstrong Dep. 8:14-23). On that day, Armstrong had driven to the Lakes to participate in a golf outing with other club members there. (Scott Armstrong Dep. 13:14-15). He chose to park his car along the curb closest to the clubhouse rather than in a parking space in the parking lot because he wanted to ensure that the car would not be hit by other vehicles. (Scott Armstrong Dep. 14:10-17). The golfing started at 1:00 p.m. (Scott Armstrong Dep. 16:18-22). By 6:00 p.m., Armstrong had finished playing, freshened up, and walked to the patio area, where the Lakes had set up some dining tables for the golfers. (Scott Armstrong Dep. 16:18-23; 49:6-21; 52:8-12).

{¶4} Armstrong was seated at a table near the fire pit with Damon Canfield, Mike Powers, Brad Perrine, and Garth Cox. (Scott Armstrong Dep. 22:15-18). The Lakes had provided food and drink service to Armstrong and the other golfers from the outing. (Scott Armstrong Dep. 53:1-8). Armstrong estimated at his deposition in October 2016 that he had consumed five or six alcoholic beverages between 1:00 p.m. and 7:30 p.m. on the

day of the outing, but he contends that he was not intoxicated and had no difficulty walking. (Scott Armstrong Dep. 53:23-54:10; 59:5-9: 129:18-21; 130:10-13). Tammy Russell - a server at the Lakes - also testified at a deposition, explaining that she had served Armstrong and other golfers on the day of the outing and had not seen signs of intoxication in Armstrong that night. (Russell Dep. 38:4-7).

{¶5}    By 7:30 p.m., the sun was setting, which prompted Armstrong to leave the group so that he could drop off his sunglasses in his car. (Scott Armstrong Dep, 9:2-5; 16:16-17; 25:6-22). According to Armstrong, the sun was still providing some light in the sky. (Scott Armstrong Dep. 17:1-12). Instead of walking on a paved and lighted path through the terrace and around the clubhouse to reach his car, Armstrong chose to take an off the path shortcut across a five foot long mulched bed that lay between the patio bar and the parking lot. (Scott Armstrong Dep. 9:7-12; 15:1-3; 26:18-27:20; 28:2-6; 30:24-31:14). According to Armstrong, this shortcut was frequently used by other club members. (Scott Armstrong Dep. 27:21-28:1). Armstrong testified at his deposition that he himself had utilized this shortcut 12 to 15 times between 2003 and 2014. (Scott Armstrong Dep. 33:1-2; 47:2-6).

{¶6}    As he walked with what he describes as a normal gait over the mulched bed and into the grassy area between that bed and his parked car, he felt heavy moisture under his left foot. When he took his next step with his right foot, that foot landed in a valve box that measured 8" x 10" or 10" x 12" at the top. (Scott Armstrong Dep. 9:12-20; 18:2-4; Julie Armstrong Dep. 25:5-7). The depth of the valve box remains unclear from the record, but Armstrong claimed during his deposition that his right knee was level with the ground once his foot hit the bottom of the box. (Scott Armstrong Dep. 83:2-18;

105:19-22; 107:11-19; 112:19-21). His uneven stance at that point caused him to lose his balance and he fell to the ground. (Scott Armstrong Dep. 9:18).

{¶7}   Armstrong was not looking at the ground in front of him when he stepped into the valve box. (Scott Armstrong Dep. 9:18).   Instead, he was focused at that moment on his parked car and on the people or vehicles moving in and out of the parking lot. (Scott Armstrong Dep. 84:7-10). After lying for a few minutes on his back in standing water that surrounded the valve box, Armstrong was able to roll over and get to his feet. (Scott Armstrong Dep. 87:1-3; 112:4-18). According to Armstrong, the cover to the valve box was off and lying next to it when he stepped into the valve box. (Scott Armstrong Dep. 83:2-18; 86:16-21; 105:19-22; 107:11-19; 112:19-21). He also testified that the lid was light green in color, and he could distinguish between it and the surrounding grass once he stood up. (Scott Armstrong Dep. 86:4-5; 113:3-10; 117:2-5). He testified, too, that once he returned to a standing position after his fall, he looked down and could see that the valve box was open. (Scott Armstrong Dep. 86:4-5; 113:3-10; 117:2-5).

{¶8}   Shortly after he stood up, Armstrong saw his friend Kendra Cook walking into the Lakes from the parking lot. (Scott Armstrong Dep. 118:10-14; 119:1-4). He called her over and asked her to find his wife Julie. (Scott Armstrong Dep. 119:19-20). Julie Armstrong soon arrived at the scene, and she helped her husband walk to his car and then drove him home. (Julie Armstrong Dep. 33:19-20: Scott Armstrong Dep. 136:18-20).

{¶9}   Chris Haunty is the Lakes' superintendent. (Haunty Dep. 8:4-21). He is responsible for maintaining the grounds, including the lawns, flower beds, parking lots, and entryways, and he also oversees the drainage, irrigation, and watering system at

the golf course. (Haunty Dep. Ex.10). The parties do not know why or when the valve-box lid was removed, and Haunty testified at his deposition that in the days leading up to September 19, 2014, no Lakes employees performed work on the valve box where Armstrong fell. (Haunty Dep. 46:21-47:4; 48:18-23; Spragg Dep. 245:8-21).

{¶10} Based on photographs taken the day after the accident, Haunty does not believe that the grass near the valve box had been recently mowed. (Haunty Dep. 82:17-23; 83:3-5). According to Haunty, the area where Armstrong fell was mowed on a weekly basis in the summer, but that mowing slowed down in September when the grass stopped growing as quickly. (Haunty Dep. 82:17-23; 83:3-5; 108:3-10).

{¶11} James Spragg is the Chief Operating Officer of the Lakes. (Spragg Dep. 9:11-18). Lakes' officials first learned on the morning of September 20, 2014, about Armstrong's injury. (Spragg Dep. 18:20-23). Spragg testified at a deposition that he never saw or heard about anyone - other than Armstrong - walking across the mulched area where Armstrong was injured. (Spragg Dep. 54:12-17; 55:1-21; 56:4-21). According to Spragg, the area where Armstrong fell is not utilized by the Lakes for any club activities or as a walkway. (Spragg Dep. 60:1-6). Rather, Spragg testified that "[t]here is a concrete walkway that is lit from the lower parking lot that our members take to that [patio bar] area as well as the golf area which is exactly what the Lakes would want[.]" (Spragg Dep. 69:11-15).

{¶12} On July 5, 2016, Appellants Scott and Julie Armstrong filed a Complaint against Appellee Lakes Golf and Country Club, Inc. setting forth claims for premises liability negligence and loss of consortium.

{¶13} On April 29, 2017, Appellee filed a Motion for Summary Judgment.

**{¶14}** On May 5, 2017, Appellants filed a Memorandum Contra to Appellee's Motion for Summary Judgment.

**{¶15}** By Judgment entry filed July 14, 2017, the trial court granted Appellee's motion for summary judgment finding that the hole Appellant stepped into was open and obvious.

**{¶16}** Appellants now appeal, assigning the following error for review:

**ASSIGNMENT OF ERROR**

**{¶17}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE UNPROTECTED VALVE BOX WAS AN OPEN AND OBVIOUS DANGER ELIMINATING THE DUTY OWED TO APPELLANTS."

**I.**

**{¶18}** In their sole Assignment of Error, Appellants argue that the trial court erred in granting summary judgment in favor of Appellee. We disagree.

*Summary Judgment*

**{¶19}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶20}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such

evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶21} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*Negligence*

{¶22} The issue in this case is whether Lakes Golf and Country Club was negligent. In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

{¶23} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 1996–Ohio–137, 662 N.E.2d 287; *Shump v. First Continental–Robinwood Assocs.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability. *Shump, supra; Boydston v. Norfolk S. Corp.,* 73 Ohio App.3d 727, 733, 598 N.E.2d 171, 175 (4th Dist.1991).

{¶24} In the instant case, the parties do not dispute Appellant was an invitee on September 19, 2014, when he participated in the golf outing at the Lakes Golf and Country Club, Delaware County, Ohio. An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Broka v. Cornell's IGA Foodliner Inc.,* 5th Dist. No. 12CA100, 2013–Ohio–2506, ¶ 20 citing *Gladon, supra* at 315, 662 N.E.2d 287; *Carpenter v. Mount Vernon Gateway, Ltd.*, 5th Dist. Knox No. 13CA6, 2014-Ohio-465.

{¶25} The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its

invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *Id.* However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may happen. *Id.* Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968).

*Open and Obvious*

**{¶26}** Under Ohio law, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Id.*

**{¶27}** In *Armstrong v. Best Buy Company, Inc.*, the Ohio Supreme Court found a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992). Therefore, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. When applicable, the open and obvious doctrine

obviates the duty to warn and acts as a complete bar to any negligence claim. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

**{¶28}** The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. *Freeman v. Value City Dept. Store*, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634. The fact that a particular appellant himself or herself is not aware of the hazard is not dispositive of the issue. *Id.* It is the objective, reasonable person that must find the danger is not obvious or apparent. *Id.* The determinative issue is whether the condition is observable. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

**{¶29}** This Court has ruled that, in most situations, whether a danger is open and obvious presents a question of law. *Id.* Under certain circumstances, disputed facts may exist regarding the openness and obviousness of the danger. *Id.* However, where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious is decided by the court as a matter of law. *Id.* Further, the cases cited by appellant are distinguishable from the instant case, as in these cases there was conflicting testimony either as to whether the condition was obscured by a wall or conflicting evidence as to the visibility on the stairway at the time of the fall. *Hill v. Mullins*, 2017-Ohio-1302, 88 N.E.3d 575; *Watson v. Bradley*, 2017-Ohio-431, 84 N.E.3d 97.

**{¶30}** In its July 14, 2017, Judgment Entry, granting summary judgment in favor of Appellee, the trial court found the hole into which Appellant fell was open and obvious, and therefore, Appellee did not owe a duty to Appellant Armstrong. We agree as we find reasonable minds could not come to different conclusions as to whether the hole was an open and obvious danger.

{¶31} Here, Appellant testified that he was not looking down at the ground in front of him when he was walking to his car. (S. Armstrong Dep. 83:5-18). Appellant admitted that he was focused on his car and the people entering and leaving the parking lot. (S. Armstrong Depo. 84:7-10). Appellant stated there was still some daylight left in the sky. (S. Armstrong Dep. 17:1-12). He also testified that when he stood up after the fall, he was able to see that the valve box lid was not on the valve box but was lying next to the box, that the lid was light green and was lighter than the surrounding grass, and that he could see the hole as well. (S. Armstrong Dep. 83:2-18; 105:19-22; 107:11-9; 112:19-21; 113:3-10; 117:2-5). Armstrong's wife Julie testified that the flat surface of the valve box was 8"x10" or 10"x12" at the top. (J. Armstrong Dep. 25:5-7; S. Armstrong Dep. 116:6-11). During his deposition, Armstrong stated that he did not believe that he knocked the cover off of the valve box. (S. Armstrong Dep. 107:11-21).

{¶32} Additionally, the photographs taken by Armstrong's wife the following afternoon show that valve box was observable from at least a distance of several feet away. (J. Armstrong Dep. 21:5-6).

{¶33} Based on the foregoing facts and testimony, we find that the evidence supports the conclusion that the valve box was open and the hole or opening in the ground was readily observable by a reasonable invitee exercising ordinary care.

{¶34} We find this case analogous to cases finding no genuine issue of material fact exists, particularly the case of *Bauermeister v. Real Pit BBQ, LLC*, 5th Dist. Delaware No. 14 CAE 04 024, 2014-Ohio-4501, 2014 WL 5089094, in which the plaintiff fell exiting a restaurant. This Court found the slope and riser deviation was open and recognizable, as observed in the photographs provided. *Id. See also Ryan v. Gaun*, 5th Dist. Licking

No. 2003CA00110, 2004-Ohio-4032, 2004 WL 1728519 (rejecting appellant's argument that the hazard presented by the steep slope was hidden and latent and finding the hazard presented by the slope was open and obvious, even though the exact degree of the slope was unknown and finding appellees' failure to provide notice of the exact slope degree of the ramp does not render the ramp a latent, hidden danger); *Freeman v. Value City Dept.* Store, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634, 2010 WL 3766806 (holding threshold was open and obvious because it was neither hidden from view nor concealed as the plaintiff testified nothing obstructed her view and she had a clear view of where she was going); *Snyder v. Kings Sleep Shop, LLC*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003, 2014 WL 1343678 (holding danger posed by ramp in doorway of store was open and obvious); *Jackson v. Board of Pike Commissioners*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875, 2010 WL 3902618 (holding danger associated with sidewalk and handicap ramp was open and obvious because nothing about the danger is hidden or concealed from view).

*Attendant Circumstances*

{¶35} An exception to the open and obvious doctrine is the existence of attendant circumstances. *Aycock v. Sandy Valley Church of God,* 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105, 2008 WL 115829. These attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and may create a genuine issue of material fact as to whether a hazard is open and obvious. *Id.* For this exception to apply, an attendant circumstance must divert the attention of the injured party, significantly

enhance the danger of the defect, and contribute to the injury. *Bovetsky v. Marc Glassman, Inc.* 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863, 2016 WL 6906148.

**{¶36}** There is no precise definition of attendant circumstances. *Mulcahy v. Best Buy Stores, LP,* 5th Dist. Delaware No. 13 CAE 06 0051, 2014-Ohio-1163, 2014 WL 1340657. Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control. *Id.* The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. *Aycock v. Sandy Valley Church of God,* 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105, 2008 WL 115829.

**{¶37}** Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. *Id.,* citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 693 N.E.2d 807 (1st Dist. 1996). Further, an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger. *Freeman v. Value City Dept. Store,* 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634, 2010 WL 3766806. Rather, the analysis of attendant circumstances uses an objective test. *Mulcahy v. Best Buy Stores, LP,* 5th Dist. Delaware No. 13 CAE 06 0051, 2014-Ohio-1163, 2014 WL 1340657.

**{¶38}** Appellant alleges in this case that there are attendant circumstances that create a genuine issue of material fact as to whether the hazard is open and obvious. Appellant first alleges that (1) Appellee had knowledge of the open valve box; (2)

Appellant's attention was drawn to the activity in the parking lot, (3) the lighting was insufficient in the area he fell and, (4) the lid of the box was similar in the color to the grass. He alleges that these attendant circumstances create a genuine issue of material fact.

{¶39} Having considered the evidence of record, we find that none of the circumstances identified by Appellant are significant enough to either reduce the degree of care he was required to exercise for his own safety or enhance the danger of the hazard.

{¶40} Initially, we find that Appellee's alleged knowledge of the open valve box could not be an attendant circumstance as any such knowledge could not have posed a distraction to Appellant.

{¶41} Appellant also argues that his attention was focused on his car and who was coming and going from the club. (S. Armstrong Dep. 84:8-85:8). He did not establish that the traffic in the parking lot at the time he fell was any different than a shopper would ordinarily encounter in that parking lot. *See Cooper v. Meijer Stores L.P.,* Franklin App. No. 07AP-201, 2007-Ohio-6086. Vehicles and other pedestrians are commonplace in a business parking lot. Without more, they do not create a distraction, or attendant circumstance that would reduce the degree of care an ordinary person would exercise. *Cooper; see, also*, *Seifert v. Great Northern Shopping Center* (Nov. 5, 1998), Cuyahoga App. No. 74439 (finding that a crowded parking lot and heavy vehicular traffic on a holiday weekend did not constitute attendant circumstances). *See also Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. Richland No. 2012 CA 0068, 2012-Ohio-5502, 2012 WL 5985086, "normal traffic" of people coming in and out of a restaurant is not a

circumstance so significant or unusual as to rise to the level of attendant circumstances. Further, in *Rayburn v. Delaware Co. Agricultural Society*, 5th Dist. Delaware No. 15 CAE 02 0016, 2015-Ohio-1903, 2015 WL 2375858, we held there was no evidence to establish the numerous people in the area distracted plaintiff to the point of reducing the degree of care an ordinary person would exercise.

**{¶42}** Appellant further testified that he had parked his car in that same location, along the curb next to the grassy area where he fell, on several other occasions. (S. Armstrong Dep. 34:14-17; 83:19-84:6). Appellant was a regular member of the club and was familiar with the area.

**{¶43}** With regard to the lighting or lack thereof, courts have rejected that darkness, whether naturally occurring or as the result of inadequate lighting, is an attendant circumstance for two principal reasons:

(1) " 'Darkness' is always a warning of danger, and for one's own protection it may not be disregarded." *Jeswald v. Hutt,* 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph three of the syllabus; *Swonger v. Middlefield Village Apts.,* 11th Dist. Geauga No.2003–G–2547, 2005–Ohio– 941, ¶ 13 ("[s]ince darkness itself constitutes a sign of danger, the person who disregards a dark condition does so at his or her own peril"); *McCoy v. Kroger Co.,* 10th Dist. Franklin No. 05AP–7, 2005–Ohio–6965, ¶ 16 ("darkness increases rather than reduces the degree of care an ordinary person would exercise"); *Shipman v. Papa John's,* 3rd Dist. Shelby No. 17– 14–17, 2014–Ohio–5092, ¶ 30 ("many Ohio courts have recognized that darkness is an open and obvious condition") (cases cited); *Gibbs v.*

*Speedway LLC,* 2014–Ohio–3055, 15 N.E.3d 444, ¶ 29 (2nd Dist.) ("[t]he inability to see by virtue of the tanker blocking the light was an open and obvious danger, and Speedway owed no duty to Mr. Gibbs to warn him about it").

(2) "One who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night * * *." *Jeswald* at paragraph one of the syllabus; *Swonger* at ¶ 12 ("Ohio law is clear that a business owner is under no affirmative duty to light walkways and public parking areas outside their buildings to accommodate invitees"); *Shipman* at ¶ 31 ("Ohio Courts have found that there is no obligation for a business owner to illuminate the parking area"); *Scheetz v. Kentwood, Inc.,* 152 Ohio App.3d 20, 2003–Ohio–1209, 786 N.E.2d 501, ¶ 10 (11th Dist.) ("[b]ecause appellee had no duty to provide lighting in the restaurant parking lot, it could not have breached any such duty by failing to illuminate its parking lot on the night Mrs. Scheetz fell").

**{¶44}** *Cash. v. Thomas & King, Ltd.*, 11th Dist. Trumbull County No. 2015-T-0030, 2016-Ohio-175.

**{¶45}** Further, Appellant testified that it was not yet dark when he walked to his car, that there was still daylight left in the sky. (S. Armstrong Dep. 17:1-12).

**{¶46}** We likewise find that the fact the valve box color was green like the surrounding grass did not create an attendant circumstance. The color of the lid was not relevant because the valve box was uncovered at the time of Appellant's fall.

Furthermore, Armstrong testified that he was able to see both the hole and the cover when he stood up after he fell. (S. Armstrong Dep. 114:1-5; 116:2-21; 117:2-5).

**{¶47}** Based on the foregoing, we find that reasonable minds could only conclude the valve box was open and obvious. We further find no evidence of any attendant circumstances which enhanced the danger to Appellant and contributed to his fall. We therefore find the Lakes Golf and Country Club owed no duty to Appellant, and the trial court did not err in granting summary judgment to Appellee.

**{¶48}** Appellants' sole Assignment of Error is overruled.

**{¶49}** For the forgoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 0301